AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES,
AFL–CIO, et al.

v.

Samuel R. PIERCE, Secretary of Department of Housing and Urban Development, Appellant.

No. 82–2372.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 7, 1982.
Decided Dec. 8, 1982.

Carolyn B. Kuhl, Deputy Asst. Atty. Gen., Dept. of Justice, of the Bar of the Supreme Court of California, Los Angeles, Cal., pro hac vice, by special leave of the Court, with whom Stanley S. Harris, U.S. Atty., Douglas N. Letter, Atty., Dept. of Justice, and Gershon M. Ratner, Associate Gen. Counsel, Dept. of HUD, Washington, D.C., were on the brief, for appellant. Robert E. Kopp, Atty., Dept. of Justice, Washington, D.C., also entered an appearance for appellant.

Joseph Goldberg, Washington, D.C., for appellee. James R. Rosa, Washington, D.C., also entered an appearance for appellee.

Before GINSBURG and BORK, Circuit Judges, and BAZELON, Senior Circuit Judge.

Opinion PER CURIAM.

PER CURIAM:

The Secretary of Housing and Urban Development (HUD) appeals from a November 15, 1982, district court order enjoining him from carrying out a reduction-in-force (RIF) involving approximately 181 HUD employees.[1] The injunction was to remain in effect until December 31, 1982. For the reasons stated below, we reverse the district court's order and remand with instructions to enter judgment for the Secretary.[2]

Plaintiff-appellees are HUD employees affected by the personnel action, their union (American Federation of Government Employees, AFL–CIO), and Congressman Martin Sabo, a member of the House Appropriations Committee. They allege that the proposed RIF was a "reorganization of the Department" of the type Congress meant to block through a provision in the HUD Appropriation Act precluding use of funds "prior to January 1, 1983, to plan, design, implement, or administer any reorganization without the prior approval of the Committees on Appropriations." Department of Housing and Urban Development—

Independent Agencies Appropriation Act, 1983, Pub.L. No. 97–272, 96 Stat. 1160, 1164 (1982).

The district court ruled that Congressman Sabo had standing to challenge the Secretary's action, did not decide whether the union or the HUD employees could pursue the case, assumed *arguendo* the unconstitutionality of the clause lifting the funding prohibition upon "the prior approval of the Committees on Appropriations," severed the approval clause, and applied the provision, as trimmed, to enjoin the RIF. Thus, under the order we review in this expedited appeal, the Secretary is estopped from using appropriated funds before December 31, 1982, to "plan, design, implement, or administer any reorganization of the Department." We agree that Congressman Sabo has standing to commence this lawsuit, pretermit the question whether the district court was the appropriate forum for the employees' complaint, find the approval clause unconstitutional and not severable from the preceding portion of the sentence in which it is contained, and hold the provision invalid in its entirety.

### STANDING

■ Congressman Sabo asserts that he has standing both in his capacity as a legislator and as a member of the House Appropriations Committee. The district court found standing based on his membership in Congress, but did not explicitly consider the

1. According to appellees, RIF notices were issued to "approximately 222 employees." Brief of Appellees at 3.

2. Appellees assert the near mootness of this suit; they contend that the general notice of reduction-in-force has expired, therefore the Secretary cannot implement the RIF, whatever the outcome of this appeal. The general notice, issued on August 20, 1982, states "[s]pecific RIF notices will be effective on or before 90 calendar days from the date of this general notice or from the date of extension of this notice." *See* Brief of Appellees at Appendix B, 2; *see also* 5 C.F.R. § 351.801(b) ("notice shall not be issued more than 90-days before release"); Federal Personnel Manual, ch. 351, ¶ 6–2(a) (90 days maximum for notice of reduction-in-force). The specific notices of reduction-in-force were issued on September 29,

1982, with an effective date of October 31, 1982. The Secretary never extended the general notice.

Appellees maintain that the general notice expired 90 days after issuance, on November 18, 1982, thus new notices must precede any attempt to implement a RIF. The district court's stop order, however, made from the bench on November 10, 1982, and embodied in an injunction filed on November 15, 1982, must be deemed to have tolled the running of the 90-day notice period. Tolling would continue pending this court's decision. Therefore the notice issued on August 20 is still valid. Appellees' argument, were it accepted, would effectively insulate the district court's order from appellate review. We cannot embrace the argument.

significance of his membership on the House Appropriations Committee. We address the two grounds separately. For purposes of the standing issue, we accept as valid Congressman Sabo's pleaded legal theory. *See Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975); *Goldwater v. Carter,* 617 F.2d 697, 701–02 (D.C.Cir.) (en banc), *vacated on other grounds,* 444 U.S. 996, 100 S.Ct. 533, 62 L.Ed.2d 428 (1979). Essentially, his claim of injury rests on the premise that, under the governing law, a reorganization of HUD could not commence prior to January 1, 1983, without the approval of the Appropriations Committees.

### Congressman Sabo's membership in the House of Representatives

With respect to this basis for standing, we disapprove the district court's reliance upon *Kennedy v. Sampson,* 511 F.2d 430 (D.C.Cir.1974), and find *Harrington v. Bush,* 553 F.2d 190 (D.C.Cir.1977), the controlling precedent. In *Harrington,* a congressman requested that the court examine the conduct of the Central Intelligence Agency, declare that it had misused funds, and enjoin such further conduct. *Id.* at 202. There, as here, the congressman's stake as a legislator was merely an interest in having laws executed properly. It was not, as in *Kennedy,* an interest in the process by which a bill becomes a law. Any interest that a congressman has in the execution of laws would seem to be shared by all citizens equally. Injury to that interest is a "generalized grievance[ ] about the conduct of government," *Flast v. Cohen,* 392 U.S. 83, 106, 88 S.Ct. 1942, 1955, 20 L.Ed.2d 947 (1968), which lacks the specificity to support a claim of standing. *See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 475, 102 S.Ct. 752, 762, 70 L.Ed.2d 700 (1982).

### Congressman Sabo's membership on the House Appropriations Committee

This basis for standing, however, is controlled by *Kennedy,* which involved a challenge to President Nixon's alleged abuse of the pocket veto. Senator Kennedy asserted that a bill passed by both Houses of Congress had become law without signature of the President. We found that the Senator had standing because the President's actions had denied him the effectiveness of his vote in enacting the statute. He claimed an interest which he, as a senator, had in the legislative process, different from any interest that he, like any other citizen, may have had in the execution of the bill once enacted.

In the present case, the Appropriation Act gave Congressman Sabo the right, as a member of the Appropriations Committee, to participate in approval of any reorganization of HUD conducted before January 1, 1983. The Secretary's actions injured him by depriving him of that specific statutory right to participate in the legislative process.[3] That right, unique to members of the Appropriations Committees, is not a general interest in the faithful execution of laws, but rather a particular interest in the law as it relates to their authority. Under currently governing precedent, therefore, Congressman Sabo has a sufficient "personal stake in the outcome of the controversy," *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962), to ensure that the dispute sought to be adjudicated will be presented in "a concrete factual context conducive to a realistic appreciation of the consequences of judicial action." *Valley Forge, supra,* 454 U.S. at 472, 102 S.Ct. at 758.

### CONSTITUTIONALITY OF THE PROVISO

▮ The challenged provision of the HUD Appropriation Act can be interpreted

---

**3.** The interest Congressman Sabo asserts here is closely analogous to the interest asserted in *Goldwater v. Carter,* 617 F.2d 697 (D.C.Cir.) (en banc), vacated on other grounds, 444 U.S. 996, 100 S.Ct. 533, 62 L.Ed.2d 428 (1979). There, a group of senators challenged the President's authority to terminate a treaty without a vote of the Senate. We found standing because the President's action injured the senators' alleged constitutional right to vote on a treaty termination.

in two ways. First, it may be regarded as creating a power in either Appropriations Committee to prevent otherwise-authorized expenditures of funds. This reading would make the provisions a legislative veto in the usual sense, in this case a veto power placed by law in a single committee of the House or the Senate.[4] Second, the passage may be seen (perhaps more naturally) as prohibiting HUD from using appropriated funds for certain purposes but empowering both Appropriations Committees, acting together, to lift the prohibition and authorize HUD to make such use of the funds. We examine both readings of the statute under the law established by *Consumer Energy Council v. FERC,* 673 F.2d 425 (D.C.Cir.1982), appeals docketed, Nos. 81–2151 etc., 50 U.S.L.W. 3949 (U.S. May 21, 1982), which was unanimously adopted by the en banc court in *Consumers Union, Inc. v. FTC,* 691 F.2d 575 (D.C.Cir.1982), *jurisdictional statement filed* (U.S. Dec. 6, 1982).

*Consumer Energy* holds that a one-house veto of otherwise permitted executive action is an act of legislative power, 673 F.2d at 464–70, and violates the Constitution in three respects. Legislative power may be exercised only as provided in article I, section 7 of the Constitution, *id.* at 464. A one-house veto impermissibly makes law without a vote by both Houses of Congress and circumvents the President's power to veto. Legislative vetoes also violate the principle of separation of powers. They provide a means for Congress to control the executive without going through the full lawmaking process, thus unconstitutionally enhancing congressional power at the expense of executive power. *Consumer Energy,* 673 F.2d at 476; *Consumers Union,* 691 F.2d at 577. As a one-house veto, the power contained in the HUD Appropriation Act is thus violative of the Constitution and void. That conclusion is only reinforced by the fact that the Act does not even provide a one-house veto but a one-committee veto.

The provision can also be taken as granting the Appropriations Committees the power to lift a congressionally-imposed restriction on the use of appropriated funds. In this light, the directive is nothing more or less than a grant of legislative power to two congressional committees. It is plainly violative of article I, section 7, which prescribes the only method through which legislation may be enacted and which "restrict[s] the operation of the legislative power to those policies which meet the approval of three constituencies, or a supermajority of two." *Consumer Energy,* 673 F.2d at 464 (footnote omitted). Although bicameralism is in a sense present under the contested procedure—a committee of each house is involved—it is in the more significant sense lacking, since neither house itself is fully involved in the legislative act. In any event, the lack of presentment of the "legislation" to the President is enough to invalidate the provision. Separation-of-powers principles are offended because Congress has attempted to enlarge its powers in relation to the President's by making him subject to committee lawmaking.

### SEVERABILITY

■ The provision at issue reads in full: *Provided,* That none of the funds made available in this paragraph may be used prior to January 1, 1983, to plan, design, implement, or administer any reorganization of the Department without the prior approval of the Committees on Appropriations. (Emphasis in original.)

Avoiding the constitutional question, the district court assumed *arguendo* the invalidity of the approval device. In the district court's judgment, the provision survived without it. Citing *Buckley v. Valeo,* 424 U.S. 1, 108, 96 S.Ct. 612, 677, 46 L.Ed.2d 659

---

4. Appellees suggest that if the provision is interpreted as a veto then this case is not ripe for adjudication because no veto has been cast by either committee. Brief of Appellees at 13–18. This does not help appellees' case. If one of the committees must act in order for the prohibition to be effective, the fact that no vote has been taken means that the President is free to reorganize HUD headquarters. Appellees have inadvertently provided an alternative ground for dismissing their suit. If they mean to suggest that committee inaction constitutes a veto, then a veto has in fact been cast.

(1976),[5] and one item of legislative history, the House Report, H.R.Rep. No. 97–720, 97th Cong., 2d Sess. at 9–10 (1982) [House Report], the court declared as the governing law an absolute ban on all HUD reorganization-directed activity until January 1, 1983. But the legislative history reveals that neither House favored total foreclosure of HUD reorganization in 1982, indeed the Senate initially opposed any restraint on the Department. In the absence of indicators that Congress would have opted for an absolute prohibition on HUD reorganization, we conclude that the proviso is not divisible. Therefore it must fall in its entirety.

All parties recognize that the reorganization funding restriction was "compromise legislation." Brief of Appellees at 4; *see also* Brief for Appellant at 36–39. The House version would have banned HUD's use of fiscal year 1983 funds for reorganization *unless the Appropriations Committees approved.* *See* House Report, *supra,* at 10. The Senate version contained no restriction. The Senate Committee report stated:

> The Committee has deleted House bill language specifying that no funds may be used to plan or implement a reorganization of the Department without the prior approval of the Committees on Appropriation. The Committee believes that such legislation is overly restrictive and will impair the Department's ability to institute management improvements and cost savings.

S.Rep. No. 97–549, 97th Cong., 2d Sess. at 29 (1982). The conferees settled on reten-tion of the funding prohibition coupled with the committee approval clause, but set a December 31, 1982, termination date for the restriction. *See* H.R.Rep. No. 97–891 (Conference), 97th Cong., 2d Sess. at 7 (1982).

This court has said with regard to severability, "the crucial inquiry [is] whether Congress would have enacted other portions of the statute in the absence of the invalidated provision." *Consumer Energy,* 673 F.2d at 442. Looking solely to the House Report, the district court observed that the Appropriations Committee "was concerned about the proposed RIF actions in [HUD's] central office and sought to avoid the use of appropriated funds for 'any reorganization' prior to January 1, 1983." *American Federation of Government Employees, AFL–CIO v. Pierce,* No. 82–3111, slip op. at 6 (D.D.C. Nov. 15, 1982). This statement bears clarification, for the House never put forward a provision without a committee approval clause tied to it. Inexplicably, the district court overlooked the Senate Committee's clearly expressed reservations about the House version of the bill.

In sum, the legislative history casts grave doubt on any supposition that the Senate would have agreed to an absolute prohibition, a ban which would have precluded HUD from making personnel decisions that ordinarily accompany an agency's programmatic authority. We therefore hold the prohibition on HUD reorganization "inextricably bound" to the invalid committee approval device. *Planned Parenthood of Central Missouri v. Danforth,* 428 U.S. 52, 83, 96 S.Ct. 2831, 2847, 49 L.Ed.2d 788

---

**5.** The language quoted by the *Buckley* Court, and relied upon by the district court, appears in *Champlin Refining Co. v. Corporation Comm'n,* 286 U.S. 210, 234, 52 S.Ct. 559, 564, 76 L.Ed. 1062 (1932). The Supreme Court in *Champlin Refining Co.* rejected the argument that, because one section of a law is found unconstitutional, an entirely different section should also be invalidated: "The unconstitutionality of a part of an Act does not necessarily defeat or affect the validity of the remaining provisions." *Id.* The district court in the instant case severed a clause within a sentence, not a separate section of a larger act. More importantly, the state law challenged in *Champlin Refining Co.* contained a severability clause, a section de-claring that the invalidity of any part of the Act would not affect the remaining parts. "That discloses," the Court noted, "an intention to make the Act divisible and creates a presumption that, eliminating invalid parts, the legislature would have been satisfied with what remained and that the scheme of regulation derivable from the other provisions would have been enacted without regard [to the stricken portion]." *Id.* at 235, 52 S.Ct. at 565. Congress did not declare the committee approval clause of the HUD Appropriation Act proviso to be severable. Nor, as we demonstrate, is there sufficient evidence that Congress would have enacted the proviso without regard to the clause.

(1976).  Accordingly, both parts of the single sentence Congress adopted are invalid.

For the foregoing reasons, the judgment of the district court is

*Reversed.*

Before ROBINSON, Chief Judge, and WRIGHT, TAMM, MacKINNON, WILKEY, WALD, MIKVA, EDWARDS, GINSBURG, BORK and SCALIA, Circuit Judges.

## ORDER

PER CURIAM.

Members of the Court have requested the taking of a vote on their *sua sponte* suggestion that this case be reheard by the Court *en banc.*  The suggestion has been transmitted to the full Court.  A majority of the Judges in regular active service have not voted in favor of the suggestion and, accordingly, this case will not be reheard *en banc.*

Circuit Judges WRIGHT, WALD and MIKVA would grant rehearing en banc.

A statement of Circuit Judges WALD and MIKVA concerning rehearing en banc is attached.

Statement of Circuit Judges WALD and MIKVA.

We would rehear this case *en banc* because vitally important issues of executive-legislative relations are articulated too broadly and explored inadequately in the panel opinion.  We are especially concerned that the panel's opinion lumps together for automatic rejection under the rubric of "legislative vetoes" several different kinds of statutory provisions, each entailing a distinct accommodation between the executive and legislative branches.  Such black-and-white treatment of these statutes ignores a largely gray area that has existed for 200 years in our constitutional scheme.

The statutory provision invalidated in this case—requiring that both the Senate and House Appropriations Committees approve any expenditure of funds "used prior to January 1, 1983, to plan, design, implement, or administer any reorganization of

[HUD]"—is easily distinguishable from the legislative vetoes previously found to be unconstitutional by this court.  Both *Consumer Energy Council v. FERC,* 673 F.2d 425 (D.C.Cir.1982), *appeal filed,* 50 U.S.L.W. 3949 (U.S. June 1, 1982) (No. 81–2151), and *Consumers Union, Inc. v. FTC,* 691 F.2d 575 (D.C.Cir.1982) (en banc) (per curiam), involved provisions permitting "legislative review of agency rulemaking," 673 F.2d at 451, and thus presented clear situations of congressional intrusion into an executive branch function.  This case, on the other hand, involves a legislative review provision in an appropriations act that would require committee approval of an executive branch reorganization before appropriated funds could be expended.  At least to this extent, the present case requires a different analysis of the constitutional interplay between the two branches.

We write separately to underscore our concern that language in the panel's opinion not be read to foreclose careful consideration in subsequent cases of historical experience, practical working relationships, and the deference due Congress when it establishes its own procedures under the Constitution.  For example, we note that both the Reorganization Act of 1977, 5 U.S.C. § 906 (Supp. V 1981), and the Congressional Budget and Impoundment Act of 1974, 31 U.S.C. § 1403 (1976), include provisions permitting either house of Congress to disapprove of proposed executive actions.  We are convinced that these and similar statutes cannot simply be invalidated under the reasoning of our prior opinions without detailed examination of how such arrangements operate and what they are designed to accomplish.  *Cf. Consumer Energy,* 673 F.2d at 457–60 (recognizing possible exceptions, including presidential plans for executive branch reorganization, to the court's holding); *Atkins v. United States,* 214 Ct.Cl. 186, 556 F.2d 1028 (1977) (per curiam) (upholding legislative review provision in Federal Salary Act of 1967), *cert. denied,* 434 U.S. 1009, 98 S.Ct. 718, 54 L.Ed.2d 751 (1978).  Various factors—whether related to the subject area covered by the statute

or the particular procedures mandated—remain to be considered in the specific context of future cases. Courts should examine closely the constitutional issues raised by each legislative review provision before invalidating on a pro forma basis all statutes that provide for after-the-fact congressional oversight.

Given that the expedited opinion in the present case was released only one day after oral argument, and was based on briefs that barely addressed potential differences among relevant statutes, such an in-depth examination has not yet occurred. The emergency that gave rise to this panel opinion should neither overwhelm nor pretermit more deliberation in the future before defining and taking sides on so fundamental a constitutional clash between branches of government. We anticipate that this court will move in a measured fashion in its treatment of this explosive and far-reaching controversy between Congress and the executive branch.