HUMAN RESOURCES DEVELOPMENT INSTITUTE, INC., Plaintiff,

v.

Raymond J. DONOVAN, Secretary of Labor, et al., Defendants.

Civ. A. No. 83–3017.

United States District Court, District of Columbia.

Nov. 7, 1983.

**618**

Terry R. Yellig, Washington, D.C., for plaintiff.

Robert C. Seldon, Asst. U.S.Atty., William H. DuRoss, III, Robert S. Lavet, Dept. of Labor, Washington, D.C., for defendants.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JOHN H. PRATT, District Judge.

This action was initiated on October 13, 1983, by plaintiff, Human Resources Development Institute, Inc. ("HRDI"), a recipient of funds from the Department of Labor under the Comprehensive Employment and Training Act ("CETA"), 29 U.S.C. §§ 801–999, for the purpose of obtaining a temporary restraining order and permanent and preliminary injunctive relief to compel the Secretary of Labor and his subordinate to continue to fund HRDI under a new statute, the Job Training Partnership Act ("JTPA"), Pub.L. No. 97–300, 96 Stat. 1322, 29 U.S.C. §§ 1501 *et seq.*, at an annualized rate equal to that received by HRDI under CETA during Fiscal Year 1983. On October 14, the Court granted HRDI's motion for a temporary restraining order, because of the complexity of the issue before the Court, out of concern for the possibility of irreparable injury to HRDI, and in light of the possibility that the full Congress could enact legislation that would specifically appropriate funds for HRDI's use during FY 1984. The parties were then directed to file memoranda on plaintiff's motion for a preliminary injunction and to conduct discovery on an expedited basis.

A hearing on the motion for a preliminary injunction was scheduled for and held on October 21, 1983. Based upon the submissions of the parties and the arguments of counsel at this hearing, which provided the Court with a fuller background and understanding of this matter than it had when it granted a temporary restraining order, the Court denied plaintiff's motion for a preliminary injunction from the bench. Pursuant to Rule 52(b), Fed.R. Civ.P., these Findings of Fact and Conclusions of Law are now being issued to codify and to explain fully the basis for the Court's ruling.

1. The standards for the Court's adjudication of plaintiff's pending motion are contained in precedent such as *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.,* 559 F.2d 841, 843 (D.C.Cir.1977), and *Virginia Petroleum Jobbers Ass'n v. Federal Power Commission,* 259 F.2d 921, 925 (1958). These decisions require the Court to determine whether plaintiff is likely to succeed on the

merits, whether it would be irreparably injured without the issuance of an injunction, whether a stay would harm third parties, and whether a preliminary injunction would further the public interest. As shown below, when measured against these standards, plaintiff's motion should be denied.

### A. *The Merits*

■ 1. The authority of the Secretary of Labor to determine how to apportion funds in DOL's budgetary process is derived from Article II of the Constitution and is a plenary executive power. Insofar as is relevant here, the exercise of this discretion may be limited by Congress only by the promulgation of legislation which has the force and effect of law and which defines or redefines the delegation of authority to the Secretary. *See, e.g., Amalgamated Meat Cutters v. Connally,* 337 F.Supp. 737 (D.D.C.1971) (three judge court).

■ 3. Legislation affecting the operation of the federal government must be presented to and approved by a majority of both Houses of Congress and, if necessary, enacted over a Presidential veto before it has the force and effect of law. U.S. Const., Art. I, Sec. 7. *American Federation of Government Employees v. Pierce,* 697 F.2d 303 (D.C.Cir.1982); *Consumer Energy Council of America v. Federal Energy Regulatory Commission,* 673 F.2d 425, 464 (D.C.Cir.1982) (*en banc*).[1] Short of adhering to the Constitutionally prescribed method of exercising its Article I legislative authority, Congress is without power to appropriate federal funds or to dictate to the Executive Branch the manner in which particular statutory programs are to be effected or funded. *Id.*

4. For the past several fiscal years, statutes governing appropriations to federal agencies have taken the form of continuing resolutions that appropriate funds on an annualized rate for a fixed period of time of one fiscal year or less in length.

*See,* Pub.L. No. 97–377, 96 Stat. 1830; Pub.L. No. 97–276, 96 Stat. 1186; Pub.L. No. 97–161, 96 Stat. 22; Pub.L. No. 97–92, 95 Stat. 1183; Pub.L. No. 97–85, 95 Stat. 1098; Pub.L. No. 97–51, 95 Stat. 958. For the first portion of Fiscal Year 1984, the government's appropriations were again codified in a Continuing Resolution, H.J. Res. 368, 98th Cong. 1st Sess. (Sept. 30, 1983). Insofar as an appropriation for the Department of Labor was concerned, this Continuing Resolution provided as follows:

> Such amounts as may be necessary for projects or activities, not otherwise specifically provided for in this joint resolution, at a rate for operations and to the extent and in the manner provided for in the following appropriations Acts as passed by the Senate as of October 1, 1983.

> Departments of Labor, Health and Human Services, and Education and Related Agencies Appropriations Act, 1984, under the terms and conditions provided for in such Act for fiscal year 1983.

H.J.Res. 368, Sec. 101(b)(1).

5. The first Continuing Resolution for Fiscal Year 1983 incorporated by reference into H.J.Res. 368 (Pub.L. No. 97–276) does not specifically refer to JTPA programs or to HRDI by name. The second such Continuing Resolution (Pub.L. No. 97–377) is somewhat more specific with respect to the various Administrations within DOL and does mention CETA programs in Section 512. However, it does not address individual activities under CETA or the JTPA, or in any way direct the Secretary of Labor to fund specific activities or organizations in any particular manner.

6. The only mention made of funding under the JTPA relevant to the Continuing Resolution raised by HRDI appears on pages 2 and 3 of the Conference Report which accompanied H.J.Res. 368, H.R.Rep. No. 98–397, 98th Cong. 1st Sess. (Sept. 30, 1983). This language, purporting to direct

---

1. The Constitution expressly specifies certain exceptions to the prescription that all legislative action must proceed in accordance with Article I, Section 7. None of these exceptions applies here.

the Secretary of Labor to maintain HRDI's funding at the FY 1983 levels, does not appear in the reports of either of the full Houses of Congress. Nor was it presented to and approved by a majority of both Houses.

7. On October 20, 1983, both Houses of Congress approved an appropriations bill, H.R. 3913, to provide funding for the Department of Labor for the remainder of Fiscal Year 1984. Although this bill had not been reviewed by the President at the time of the hearing on HRDI's motion for a preliminary injunction, the Court did review it to determine if there was an indication by the full Congress that, as of the effective date of H.R. 3913, HRDI might be slated to receive a specific appropriation. H.R. 3913 does not contain an appropriation specific to HRDI. As was true of H.J.Res. 368, H.R. 3913 was accompanied by a conference report which purportedly directed the Secretary of Labor to continue to fund HRDI as he had done in FY 1983. H.R. No. 98–422, 98th Cong. 1st Sess. (Oct. 19, 1983). This directive, however, was not carried over into H.R. 3913, although Title I of that statute does earmark appropriations of a similar size to that sought by plaintiff for other activities and organizations funded by DOL.

8. Plaintiff has admitted, both in its responses to defendants' discovery as well as during the two hearings held by the Court, that neither H.J.Res. 368 nor H.R. 3913 contains language directing the Secretary to fund HRDI at a particular level, or even to fund HRDI at all. HRDI contends, however, that it has a legally enforceable right to require the Secretary to fund it in accordance with the conference report language. Such language, HRDI argues, overrides the Secretary's otherwise plenary, executive authority.

9. HRDI's argument is not well taken. As discussed earlier, absent action by the full Congress under Article I, Section 7 of the Constitution, the Secretary enjoys complete executive discretion in managing the Department of Labor. *AFGE v. Pierce, supra; Consumer Energy Council v.*

*FERC, supra.* This principle of law · is fully applicable to DOL's appropriations and budget activity, as is recognized uniformly in prior decisions of the Comptroller General of the United States, of the United States Court of Appeals for the District of Columbia Circuit, and of this Court as well, which hold that:

> [S]ubdivisions of an appropriation contained in any agency's budget request or in committee reports are not legally binding upon the department or agency concerned, unless they are specified in the appropriation act itself. Comptroller General Decision B–184830, 55 Comp. Gen. 812, 819–20 (1976).

> *       *       *       *       ⁝       *

> [W]hen Congress merely appropriates lump-sum amounts without statutorily restricting what can be done with those funds, a clear inference arises that it does not intend to impose legally binding restrictions, and indicia in committee reports and other legislative history as to how the funds should or are expected to be spent do not establish any legal requirements on federal agencies. Comptroller General Decision B–183851, 55 Comp.Gen. 307, 319 (1975).

This same result was reached in *Associated Electric Cooperative, Inc. v. Morton,* 507 F.2d 1167 (D.C.Cir.1974), *cert. denied,* 423 U.S. 830, 96 S.Ct. 49, 46 L.Ed.2d 47 (1975), in *Fontaine v. Donovan,* Civil Action No. 81–0789 (D.D.C.) (Findings and Conclusions of May 21, 1981 at 13–14), *aff'd in part and vacated in part on other grounds, sub nom., West Central Missouri Rural Development Corp. v. Donovan,* 659 F.2d 199 (D.C.Cir.1981), and in Comptroller General Decision A–88141, 17 Comp.Gen. 147, 150 (1937).

10. Plaintiff nonetheless contends that where, as here, the committee report's language with respect to a particular appropriation is a mandatory direction rather than a recommendation, an executive officer is bound to comply. This assertion is not supported by the holdings in *Associated Electric Cooperative, supra,* and Comptroller General Decision B–184830, *supra.*

In both cases, the decision of an agency regarding funding was sustained even though a committee or conference report purportedly directed it to take different action.

11. The one statement of intent by the full Congress as to whether and, if so, for what time period the Secretary was to continue to fund organizations under the JTPA in the same manner as he did under CETA appears in Section 181 of the JTPA. 29 U.S.C. § 1591. This section provides that such funding levels will be maintained only until September 30, 1983, when the JTPA was to and did become fully operational. Moreover, S.Rep. No. 987–247, which accompanied H.J.Res. 368, specifically acknowledged that there would be a vast reduction in the funds available to organizations such as HRDI once the JTPA became effective. Therefore, for these reasons and those discussed earlier, the Court concludes that HRDI has a slight, if any, chance to succeed in this litigation on the merits at a later date.

### B. *Irreparable Injury*

12. HRDI contends that it will suffer irreparable injury, without a preliminary injunction providing it with the same level of funding that it received during Fiscal Year 1983 under CETA. This argument is misplaced. One of the central features that distinguishes the JTPA from CETA is a major shift from federal administration of job training programs to state and local governments and the private sector. 29 U.S.C. §§ 1531–37 and 1601–1658. Indeed, states are now the direct recipients of all federal grants under Titles II and III of the JTPA. 29 U.S.C. §§ 1601–1658. Plaintiff's complaint, therefore, is not that it may be irremediably injured by the Secretary's administration of the JTPA, but that the action of Congress in shifting emphasis to the state and local governments under the JTPA as of Fiscal Year 1984 irreparably injures the position HRDI held under CETA. Since there is no challenge in this case to the lawfulness of Congress' actions in terminating CETA and implementing the JTPA, plaintiff's claim of irreparable injury is not cognizable here.

13. Moreover, the evidence of record demonstrates that HRDI's function is primarily if not exclusively aimed at coordinating the provision of services to participants in JTPA programs. Thus, there is unlikely to be any irreparable injury to participants in JTPA programs as might otherwise occur if HRDI actually performed job training. Since HRDI acknowledged, both in its papers and at oral argument, that without more its purported loss of revenue does not constitute irreparable injury, HRDI has not met the second standard for the issuance of a preliminary injunction.

### C. *Harm To Third Parties*

14. The Department of Labor funds organizations such as HRDI through an internal DOL budget area known as Special National Programs. Regardless of the adjudication of the pending motion, the amount of money allocated to this budget area will remain at approximately $15 million for Fiscal Year 1984. Since this pool of funds is a fixed, finite amount, any relief awarded to HRDI would of necessity injure other, similarly situated recipients. Accordingly, consideration of the harm to third parties militates against an award of a preliminary injunction.

### D. *The Public Interest*

15. The appropriations process is one that is Constitutionally committed to the Executive and Legislative Branches of the federal government. As this Court recognized earlier in *Fontaine,* relief of the sort sought here would improvidently "inject this court deeply" into the appropriations process. *Fontaine, supra,* Findings and Conclusions at 18. Since this process is not one that gives rise to enforceable statutory rights in the absence of action by the full Congress, Comptroller General Decision B–183851, *supra,* 55 Comp.Gen. at 326–27, the public interest would be furthered if the Court refrained from becoming involved in HRDI's dispute with the Secretary.

16. Further, as shown earlier, under the JTPA, Congress brought an end to wholesale federal involvement in job training programs as of the beginning of FY 1984. 29 U.S.C. §§ 1531–1537, 1591, 1601–1658. Granting HRDI's motion would, in essence, provide it with continued funding as though HRDI was still operating under CETA. Since the legitimate legislative determination to bring an end to CETA is not challenged by this action, the public interest is best served by denying HRDI a continued entitlement to CETA level funding.

### Conclusion

For the foregoing reasons, plaintiff's motion for a preliminary injunction must be denied. An Order consistent with these Findings and Conclusions is being entered simultaneously.