**The Honorable Helen CHENOWETH, et al., Plaintiffs,**

v.

**William J. CLINTON, et al., Defendants.**

**No. 97–2954(HHK).**

United States District Court, District of Columbia.

March 2, 1998.

William Perry Pendley, Mountain States Legal Foundation, Denver, CO, for Plaintiffs.

Geoffrey Garver, U.S. Dept. of Justice, Environ. & Natural Resources Div., Washington, DC, for Defendants.

## MEMORANDUM

KENNEDY, District Judge.

Before this court is the plaintiffs' Motion for Preliminary Injunction and the defendants' Motion to Dismiss. Upon consideration of these motions, the responses thereto, and the entire record of the case, the court concludes that the plaintiffs' motion should be denied and that the defendants' motion should be granted on the ground that the plaintiffs lack standing to bring this action.

## I. BACKGROUND

Plaintiffs are four members of the U.S. House of Representatives who have sued William Clinton, President of the United States, for allegedly violating the United States Constitution by issuing Executive Order 13061. On September 11, 1997, President Clinton signed Executive Order 13061, which created the American Heritage Rivers Initiative (AHRI), an initiative designed "to protect and restore rivers and their adjacent communities." Exec. Order No. 13061, 62 Fed.Reg. 48445 (1997). Under the AHRI, "the President will designate rivers that, meet certain criteria as 'American Heritage Rivers,'" and "executive agencies . . ., to the extent permitted by law . . ., shall coordinate Federal plans, functions, programs, and resources to preserve, protect, and restore rivers and their associated resources important to our history, culture, and natural heritage." *Id.* at Section 1(e), (b).

The plaintiffs contend that the President may not create legislation in the form of an Executive Order unless Congress has expressly delegated such authority to the President. The plaintiffs argue that Congress has not delegated to the president the authority to create the AHRI and that the president's action of signing Executive Order 13061 therefore violates the doctrine of Separation of Powers, as well as the Commerce Clause (Art. I, Sec. 8, Cl. 3), Property Clause (Art. IV, Sec. 3, Cl. 2), Spending Clause (Art. I, Sec. 9, Cl. 7) and Tenth Amendment of the U.S. Constitution, and the Anti–Deficiency Act, 31 U.S.C. § 1301 *et seq.*, the Federal Land Policy and Management Act, 43 U.S.C. § 1701 *et seq.*, and the National Environmental Policy Act of 1969, 42 U.S.C. §§ 4321 *et seq.* Specifically, the President's action has deprived plaintiffs "of their ability to exercise their duties to review, debate, and vote on pending legislation and to conduct oversight as . . . included within the jurisdiction of their Committee and Subcommittees," and "of their constitutionally guaranteed responsibilities as Members of Congress to regulate interstate commerce, manage and regulate federal lands, and authorize and appropriate federal expenditures." (Pls.' Mot. for Prelim. Inj. at 7.) These are the injuries upon which the plaintiffs base their standing to bring this suit.

The defendants claim that Executive Order 13061 relies entirely on existing federal programs and results in no new regulatory authority, and therefore is constitutional. The defendants argue, further, that it is not necessary to reach the merits of the plaintiffs' complaint because the complaint should be dismissed for lack of standing. The court agrees that the complaint should be dismissed for lack of standing.

## II. STANDING

For the purposes of determining the plaintiffs' standing, "we must assume the validity of the [plaintiffs'] claim and construe the complaint in favor of the complaining parties." *Moore v. U.S. House of Representatives*, 733 F.2d 946, 950 (1984) (citing *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). Thus, we assume for this analysis that the President's signing of Executive Order 13061 unconstitutionally violated the Separation of Powers doctrine and the other constitutional provisions and statutes cited by plaintiffs.

The recent Supreme Court case, *Raines v. Byrd*, —— U.S. ——, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997), discusses the doctrine of standing. The court states,

Under Article III, § 2 of the Constitution, the federal courts have jurisdiction over this dispute . . . only if it is a "case" or

"controversy." . . . One element of the case-or-controversy requirement is that [plaintiffs], based on their complaint, must establish that they have standing to sue. . . . To meet the standing requirements of Article III, "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." . . . [T]o have standing, the plaintiff must have suffered a "particularized" injury, which means that "the injury must affect the plaintiff in a personal and individual way."

*Raines,* —— U.S. at ——, 117 S.Ct. at 2317, 138 L.Ed.2d 849 (internal citations omitted).

The Supreme Court further explains, "We have always insisted on strict compliance with this jurisdictional standing requirement. . . . And our standing inquiry has been especially rigorous when reaching the merits of the dispute would force us to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Id.* 117 S.Ct. at 2317–2318 (internal citations omitted). Therefore, the court concluded, "we must carefully inquire as to whether appellees have met their burden of establishing that their claimed injury is personal, particularized, concrete, and otherwise judicially cognizable." *Id.* at 2318.

*Raines* is directly relevant to the instant case because it is the most recent Supreme Court case and one of only a few addressing the issue of standing for legislators. In *Raines,* members of Congress challenged the constitutionality of the Line Item Veto Act, 2 U.S.C.A. § 691 *et seq.* (Supp.1997), which gives the President authority to "cancel" certain spending and tax benefit measures after he has signed them into law, thus allegedly diluting the Congress members' Article I voting power. While *Raines* does not directly address the circumstances of the instant case, it provides important guide posts for our analysis.

First, *Raines* distinguishes between a personal injury (the loss of a private right) and an institutional injury (the loss of political power) as the basis of a legislator's standing. While *Raines* does not categorically require that standing be based on a personal/private

injury, it does suggest that a personal injury more strongly supports a finding of standing than does an institutional injury: "[A]ppellees' claim of standing is based on a loss of political power, not loss of any private right, which would make the injury more concrete." *Id.* 117 S.Ct. at 2318.

That said, however, *Raines* clearly upholds *Coleman v. Miller,* 307 U.S. 433, 59 S.Ct. 972, 83 L.Ed. 1385 (1939), which found that state legislators claiming an institutional injury had standing. *Id.* 117 S.Ct. at 2318 ("The one case in which we have upheld standing for legislators (albeit state legislators) claiming an institutional injury is *Coleman v. Miller* "). In *Coleman,* 20 Kansas state senators' "votes against ratification have been overridden and virtually held for naught although if they are right in their contentions their votes would have been sufficient to defeat ratification." *Id.* at 2319 (quoting *Coleman,* 307 U.S. at 438). Therefore, because the legislators "have a plain, direct and adequate interest in maintaining the effectiveness of their votes," and their votes were improperly overridden and effectively nullified, the Supreme Court upheld the legislators' standing. *Id.*

In the instant case, while the plaintiffs argue that they have suffered personal injuries as members of specific House Committees and Subcommittees, their injuries are clearly institutional, rather than personal. The *Raines* court identified an institutional injury as follows:

If one of the Members were to retire tomorrow, he would no longer have a claim; the claim would be possessed by his successor instead. The claimed injury thus runs (in a sense) with the Member's seat, a seat which the Member holds (it may quite arguably be said) as trustee for his constituents, not as a prerogative of personal power.

*Id.* 117 S.Ct. at 2318. In contrast, an indication of a personal injury is when the plaintiffs have been singled out for specially unfavorable treatment relative to other Members of their respective bodies. *Id.* The plaintiffs in the instant case have not been singled out for unfavorable treatment relative to their fellow legislators, nor would their claim continue to

exist if they were to retire. Their alleged injuries, therefore, are institutional rather than personal.

While *Raines* upheld the viability of an institutional injury as a basis for standing, the Court substantially limited the reach of its determination by stating "that our holding in *Coleman* stands (at most, see n. 8, *infra*) for the proposition that legislators whose votes would have been sufficient to defeat (or enact) a specific legislative act have standing to sue if that legislative action goes into effect (or does not go into effect), on the ground that their votes have been completely nullified." *Id.* The court concluded, therefore, that the plaintiffs in *Raines* did not have standing, under *Coleman*, because they neither (1) matched the specific circumstances of *Coleman*, nor (2) had their votes nullified to the extent of the legislators in *Coleman*, since "[i]n the future, a majority of Senators and Congressmen can pass or reject appropriations bills ... can vote to repeal the Act, or to exempt a given appropriations bill ... from the Act...." *Id.* 117 S.Ct. at 2320. Regarding this second prong, the court explained, "There is a vast difference between the level of vote nullification at issue in *Coleman* and the abstract dilution of institutional legislative power that is alleged here. To uphold standing here would require a drastic extension of *Coleman*. We are unwilling to take that step." *Id.* 117 S.Ct. at 2320–2321. The court concluded, "In sum, appellees have alleged no injury to themselves as individuals (contra *Powell*), the institutional injury they alleged is wholly abstract and widely dispersed (contra *Coleman*), and their attempt to mitigate this dispute at this time and in this form is contrary to historical experience." *Id.* 117 S.Ct. at 2322.

As applied to the instant case, *Raines* directs that, given the vigorous standing inquiry that applies to suits alleging unconstitutional action by the legislative or executive branch, and the relative weakness of institutional injuries compared to personal injuries, an institutional injury may support legislative standing only if the injury occurs under the same circumstances as those in *Coleman*, or in some other way matches the level and quality of vote nullification that took place in *Coleman*. The *Raines* plaintiffs failed to establish standing because their injury was too abstract and dispersed, and did not reach the required level of vote nullification because legislative remedies were still available to them. The question we must answer, therefore, is whether the alleged injury suffered by Congresswoman Chenoweth and her fellow plaintiffs matches the vote nullification that took place in *Coleman*.

▮ The plaintiffs in the instant case have suffered an injury (assuming, for the sake of this standing analysis, that their allegations are true) that is a greater nullification of their voting power than that suffered by the plaintiffs in *Coleman*, since the instant plaintiffs never even had the opportunity to debate and vote on the AHRI. The quality of plaintiffs' injury, however, is too abstract and not sufficiently specific to support a finding of standing. As defendants assert, the plaintiffs' claims that the AHRI violates the U.S. Constitution and other Federal statutes "are precisely the kind of 'generalized grievance[s] about the conduct of government' that the D.C. Circuit Court of Appeals, even before [*Raines*], has held 'lacks the specificity to support a claim of standing.' " (Defs.' Mem. in Opp. to Pls.' Mot. for Prelim. Inj. at 13) (quoting *American Federation of Government Employees, AFL–CIO v. Pierce*, 697 F.2d 303, 305 (1982), *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 475, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982)). "[I]n the absence of any relation to a specific piece of legislation," the defendants argue, "the plaintiffs' assertion of standing is governed—and defeated—by the line of cases holding that a plaintiff's status as a member of Congress does not give [him or her] standing to sue for a declaration that executive activities are illegal." *Id.* at 14 (internal quotes omitted).

Defendants' analysis of the D.C. Circuit case law is correct. While the plaintiffs are correct that D.C. Circuit cases have upheld the principle that a legislator has standing when the legislator has suffered an injury to his "interest in the process by which a bill becomes a law," *Pierce*, 697 F.2d at 305;

*Moore*, 733 F.2d 946, other D.C. Circuit cases have held that an injury like the one claimed by the instant plaintiffs, perpetrated by the Executive branch and unrelated to a specific piece of legislation, is not sufficiently specific to support standing. *United Presbyterian Church in the USA v. Reagan*, 738 F.2d 1375 (1984), *Harrington v. Bush*, 553 F.2d 190 (1977), *Daughtrey v. Carter*, 584 F.2d 1050 (1978). This latter line of cases gains support from the rationale offered by Justice Souter in his concurrence in *Raines* that, "[b]ecause it is fairly debatable whether appellees' injury is sufficiently personal and concrete to give them standing, it behooves us to resolve the question under more general separation-of-powers principles underlying our standing requirements ." *Raines*, —— U.S. at ——, 117 S.Ct. at 2324, 138 L.Ed.2d 849 (Souter, J., concurring).

In *Pierce*, the Secretary of Housing and Urban Development (HUD) planned to carry out a reduction-in-force of the agency, which was prohibited by statute without the prior approval of the Committees on Appropriations. Because the plaintiff congressman was a member of the House Appropriations Committee, the Secretary's proposed action, which had not been approved by the Appropriations Committees, injured the plaintiff. The plaintiff congressman had standing to challenge the Secretary's action because it deprived "him of [a] specific statutory right to participate in the legislative process." *Id.* This injury was sufficiently specific and concrete because of the specific statutory authority given only to members of the Committees on Appropriations to pre-approve any reorganizations of the HUD department.

*Moore v. U.S. House of Representatives*, upon which plaintiffs primarily rely, found that the plaintiff Members of the House of Representatives had standing to challenge the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), allegedly a revenue-raising bill, on the basis that it contravened the constitutional mandate that revenue-raising bills originate in the House, rather than in the Senate. "The injury alleged by [plaintiffs] here is to an interest positively identified by the Constitution, which mandates the specific procedure by which a revenue-rais-

ing bill shall become law." *Moore*, 733 F.2d at 951. The court found that the plaintiffs' alleged injury, the deprivation of an opportunity to debate and vote on the origination of TEFRA in the House, was "specific and concrete." *Id.* at 952. The plaintiffs in Moore, unlike the instant plaintiffs, were challenging the action of the Senate in relation to a specific piece of legislation.

In contrast, *United Presbyterian, Harrington*, and *Daughtrey* denied standing to plaintiffs challenging executive actions unrelated to passing a specific piece of legislation, as in the instant case, on the basis that their injuries were not sufficiently specific. *United Presbyterian*, in particular, involved facts very similar to the instant case. The *United Presbyterian* plaintiffs, which included one member of Congress, claimed that an Executive Order unconstitutionally violated the principal of separation of powers because it was promulgated without congressional authorization. *United Presbyterian Church*, 738 F.2d at 1377. The D.C. Circuit characterized the congressman plaintiff's argument for standing as follows: "[The congressman] asserts that the Executive Order confers authority on the intelligence agencies beyond that authorized by Congress, and indeed that the order violates express limitations imposed by Congress. Therefore, appellant [congressman] claims that his powers as a legislator has been diminished, constituting sufficient injury to give him standing." *Id.* at 1381. The court found that the congressman did not have standing because "his complaint is a generalized grievance about the conduct of government, not a claim founded on injury to the legislator by distortion of the process by which a bill becomes law." *Id.* at 1382 (quoting *Moore*, 733 F.2d at 952). The court further explained, "standing does not exist... where the legislator's grievance consists of generalized, amorphous injuries due to... the conduct of the Executive... [or] a generalized complaint that [his] effectiveness is diminished by allegedly illegal activities taking place outside the legislative forum." *Id.* (quoting *Moore*, 733 F.2d at 951). The circumstances of *United Presbyterian* are sufficiently similar to the instant case that its holding directs us to find that the instant plaintiffs do not have standing.

In *Harrington v. Bush*, a Member of the U.S. House of Representatives sued for a declaration that certain foreign and domestic activities of the CIA were illegal and for an injunction prohibiting the CIA from using provisions of the Central Intelligence Agency Act of 1949 in connection with the allegedly illegal activities. The plaintiff contended that the CIA's activities exceeded its delegated statutory authority, and that the use of the CIA Act provisions in conjunction with these activities was illegal. To establish standing, the plaintiff alleged that the CIA's activities injured his participation in the legislative process. The court found, however, that the plaintiff had "failed to show injury to his effectiveness as a Congressman," and thus had "no right to invoke the power of the federal judiciary." *Harrington*, 553 F.2d at 213.

In *Daughtrey v. Carter*, the plaintiffs, including two members of the U.S. House of Representatives, sued for declaratory relief and an injunction to restrain the operation of a Presidential Proclamation entitled Granting Pardon for Violations of the Selective Service Act, and an Executive Order implementing that Proclamation. The plaintiffs contended that the president had exceeded the limits of his constitutional pardon power and usurped the power of Congress because executing the Order would purportedly violate a provision of the Immigration and Nationality Act. The court, characterizing the complaint as a "challenge to the failure of the Attorney General to enforce provisions of the Immigration and Nationality Act," found that the Congressmen lacked standing because the executive branch's failure to enforce legislation "does not affect the legal status of such legislation, nor does it invade, usurp, or infringe upon a Congressman's power to make law." *Daughtrey*, 584 F.2d at 1057.

### III. CONCLUSION

The defendants are correct that the D.C. Circuit case law consistently denies standing for legislators challenging executive actions unrelated to passing a specific piece of legislation, without some further indication of concreteness or specificity. We must conclude in the instant case, therefore, that the instant plaintiffs, as Members of the U.S. House of Representatives challenging the constitutionality of an Executive Order for its lack of Congressionally delegated authority, are alleging injuries not sufficiently specific to support a finding of standing.

An appropriate order accompanies this memorandum.

### ORDER

Pursuant to Fed.R.Civ.P. 58 and for the reasons stated by the court in its memorandum docketed this same day, it is this 2nd day of March 1998, hereby

ORDERED, that plaintiffs' motion for a preliminary injunction (document #3) is denied; and it is further

ORDERED and ADJUDGED that defendants' motion to dismiss (document #4) is granted and judgment is entered in favor of defendants.