

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-19-2007

# Russell v. Gov VI

Precedential or Non-Precedential: Precedential

Docket No. 07-1289

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Russell v. Gov VI" (2007). *2007 Decisions.* Paper 837.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/837

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

IN THE UNITED STATES COURT
OF APPEALS
FOR THE THIRD CIRCUIT

NO. 07-1289

RONALD E. RUSSELL,
Appellant

v.

GOVERNOR JOHN P. DEJONGH, JR.

On Appeal From the District Court
of the Virgin Islands
Division of St. Thomas and St. John
(D.C. Civil Action No. 06-cv-00228)
District Judge:  Hon. Curtis V. Gomez

Argued May 8, 2007

BEFORE:  SLOVITER, STAPLETON and
VAN ANTWERPEN, Circuit Judges

(Opinion Filed: June 19, 2007)

---

Royette V. Russell (Argued)
P.O. Box 3259
Kingshill, St. Croix
USVI  00851
  Attorney for Appellant

Tiffany V. Robinson (Argued)
Office of the Attorney General of the Virgin Islands
Department of Justice
34-38 Kronprindsens Gade
GERS Complex, 2nd Floor
Charlotte Amalie, St. Thomas
USVI  00802
  Attorney for Appellee

---

OPINION OF THE COURT

---

STAPLETON, Circuit Judge:

Senator Ronald E. Russell of the Legislature of the Virgin Islands here challenges the validity of the nominations and appointments of Judges Maria M. Cabret, Ive A. Swan, and

Rhys S. Hodge as justices of the Supreme Court of the Virgin Islands. Governor Charles W. Turnbull submitted those nominations to the Legislature and, at a special session called for that purpose, the Legislature voted unanimously to confirm Justices Cabret, Swan and Hodge.[1] In his complaint, Senator Russell sought, inter alia, a declaration from the District Court that the justices' commissions were void because the Governor failed to comply with the statutory deadline for submitting his nominations to the Legislature and because the Governor exceeded his statutory authority under Section 7(a) of the Organic Act, 48 U.S.C. § 1573(a), by calling the special session at which the nominees were confirmed. Senator Russell appeals from the District Court's order dismissing his complaint. We conclude that Senator Russell lacks standing to pursue both counts of his complaint.

I

On October 29, 2004, Governor Turnbull approved Act No. 6687, which established the Supreme Court of the Virgin Islands. Act No. 6687 provides that "[t]he Governor shall appoint, with the advice and consent of the Legislature, three justices and subject to the advice and consent of the Legislature, appoint a qualified person to fill any vacancy occurring in the office of justice in the Supreme Court."

---

[1]Governor Turnbull was the original defendant in this action. On January 1, 2007, the Honorable John P. DeJongh was sworn in as Governor of the Virgin Islands. He was thereafter substituted for Governor Turnbull. *See* Fed. R. App. P. 43(c)(2).

Section 3(a) of Act No. 6687 provides a time frame for the Governor to submit his initial nominations to the Legislature:

> "Notwithstanding title 4 Virgin Islands Code, chapter 2, as added by Section 2 of this Act, the Governor shall submit nominations for the associate justices of the Supreme Court to the Legislature within ninety days after the effective date of any act appropriating monies to fund the operations of the Supreme Court."

On December 15, 2005, the Legislature passed Act No. 6816 over Governor Turnbull's veto. Section 2 of Act No. 6816 provides that "[t]he Virgin Islands Public Finance Authority shall make available, forthwith, to the Superior Court of the Virgin Islands the sum of 5.75 million dollars to construct and establish the Virgin Islands Supreme Court on St. Croix."[2]

_____

[2]The location of the Supreme Court of the Virgin Islands is the subject of separate litigation between the Governor and the Legislature. Governor Turnbull sued the Legislature in the Superior Court of the Virgin Islands, arguing that Act No. 6816 and Act No. 6730—a law relocating the Supreme Court to St. Croix—are invalid in light of § 2(b) of the Organic Act, 48 U.S.C. § 1541(b), which provides that "[t]he capital and seat of the Government of the Virgin Islands shall be located at the city of Charlotte Amalie, in the island of Saint Thomas." On January 19, 2007, the Superior Court declared both acts null and void. The Legislature appealed, and that case is currently

On July 19, 2006, 216 days later, Governor Turnbull submitted the nominations of Justices Cabret, Swan, and Hodge to the Legislature. On October 24, 2006, Governor Turnbull called a special session of the Legislature, which he scheduled for October 27, 2006, for the purpose of considering his nominees and a proposed bill regarding funding for the Supreme Court. At the special session, Senator Russell made two motions seeking to delay the vote on the nominees until November 27, 2006, and to send them back to the Senate Judiciary Committee. He lost both motions by close margins, and the Legislature unanimously voted to confirm all three nominees.

Count I of Senator Russell's complaint sought a declaration that the nominations were null and void because they were not submitted to the Legislature "within ninety days after the effective date of any act appropriating monies to fund the operations of the Supreme Court," as required by Section 3(a) of Act No. 6687. Count II sought a declaration that the Governor's act of calling a special session of the Legislature was a violation of "the doctrine of separation of powers." Specifically, Senator Russell asserted that the Governor's power to call special sessions under § 7(a) of the Organic Act, 48 U.S.C. § 1573(a), is limited to doing so for the purpose of considering legislation, and that he may not call a special session for the purpose of having his judicial nominees considered. The District Court

pending in the Appellate Division of the District Court. *Turnbull v. 26th Legislature of the Virgin Islands*, No. 07-CV-0025.

5

dismissed Senator Russell's complaint. As to Count I, the Court applied the principles set forth in *Cort v. Ash*, 422 U.S. 66 (1975), and held that the statute setting forth the deadline does not confer a private right of action on Senator Russell. As to Count II, the District Court held that Senator Russell lacked standing under Article III of the Constitution because he had not suffered an injury in fact. Senator Russell now appeals.

II

This appeal presents questions regarding the standing of a legislator to sue another government official in court to redress an injury the legislator claims to have suffered in his official capacity, rather than as a private citizen. Legislators, like other litigants in federal court, must satisfy the jurisdictional prerequisites of Article III standing,[3] including the requirement

---

[3]Though the District Court of the Virgin Islands is an Article IV court, *see Parrott v. Gov't of the Virgin Islands*, 230 F.3d 615, 622-23 (3d Cir. 2000); *Brow v. Farrelly*, 994 F.2d 1027, 1032-34 (3d Cir. 1993), the source of its authority to exercise jurisdiction over this case is 48 U.S.C. § 1612(a), which authorizes the District Court to exercise "the jurisdiction of a District Court of the United States." *See also United States v. Gov't of the Virgin Islands*, 363 F.3d 276, 284-85 & n.3 (3d Cir. 2004). The District Court's exercise of "the jurisdiction of a District Court of the United States" within the meaning of 48 U.S.C. § 1612(a) is subject to the limitations of Article III of the Constitution, which apply generally to the jurisdiction of Article III District Courts. Article III, § 2 of the Constitution limits the

6

that the plaintiff "must have suffered an 'injury in fact,'" constituting "an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *United States v. Hays*, 515 U.S. 737, 742-43 (1995); *see also Allen v. Wright*, 468 U.S. 737, 751 (1984).

Concerns for separation of powers and the limited role of the judiciary are at the core of Article III standing doctrine and the requirement that a plaintiff allege an injury in fact. *See DaimlerChrysler Corp. v. Cuno*, 126 S. Ct. 1854, 1860-61 (2006); *Allen*, 468 U.S. at 750; *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Those concerns are particularly acute in legislator standing cases, and they inform the analysis of whether a legislator plaintiff has asserted an injury in fact sufficient to confer standing to sue. *See Alaska Legislative Council v. Babbitt*, 181 F.3d 1333, 1337 (D.C. Cir. 1999); *Chenoweth v. Clinton*, 181 F.3d 112, 114-15 (D.C. Cir. 1999); *Goldwater v. Carter*, 617 F.2d 697, 702-04 (D.C. Cir.) (en banc), *vacated on other grounds*, 444 U.S. 996 (1979); 13A Charles Alan Wright et al., *Federal Practice & Procedure*, § 3531.11, at 4 (2d ed. Supp. 2006) (describing the Supreme Court's analysis of legislator standing in *Raines v. Byrd*, 521 U.S. 811 (1997) as

---

jurisdiction of the federal courts to deciding "cases" or "controversies." *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998); *Flast v. Cohen*, 392 U.S. 83, 97 (1968). A necessary part of a "case" or "controversy" is that the plaintiff must allege that he or she has suffered an "injury in fact."

"standing informed—and indeed virtually controlled—by political question concerns."). With these general principles in mind, we turn to the specific injuries that Senator Russell alleges in his complaint.

A

In the proceedings before the District Court, Senator Russell testified that, in his view, the 90-day deadline in Act No. 6687 was intended to extinguish the Governor's authority to submit nominations after the deadline had passed. Senator Russell argues that the Governor's refusal to honor this deadline injures him by "nullifying his vote" in favor of that law. We disagree.

The Supreme Court, this Court, and others have held that legislators have a legally protected interest in their right to vote on legislation and other matters committed to the legislature, which is sometimes phrased as an interest in "maintaining the effectiveness of their votes." *See Coleman v. Miller*, 307 U.S. 433, 438 (1939) ("[T]hese senators have a plain, direct and adequate interest in maintaining the effectiveness of their votes."); *Babbitt*, 181 F.3d at 1337 ("In narrow circumstances, legislators have a judicially recognized, personal interest in maintaining the 'effectiveness of their votes.'"); *Dennis*, 741 F.2d at 631 (recognizing an injury to the legislators' interest in their "right to advise and consent"); *Kennedy v. Sampson*, 511 F.2d 430, 436 (D.C. Cir. 1974) ("[A]ppellee's object in this lawsuit is to vindicate the effectiveness of his vote. No more essential interest could be asserted by a legislator."). Not every affront to a legislator's interest in the effectiveness of his vote,

8

however, is an injury in fact sufficient to confer standing to sue. *See Chiles v. Thornburgh*, 865 F.2d 1197, 1205 (11th Cir. 1989) ("A precise definition of what type of 'loss of effectiveness' of a congressman's vote is judicially cognizable is of crucial significance to the standing inquiry. Too broad a definition would allow a legislator to rush to court whenever he lost a vote and too narrow a definition might allow abuses of the legislative process to go unchecked.").

In particular, the authorities appear to hold uniformly that an official's mere disobedience or flawed execution of a law for which a legislator voted—which appears to be the gravamen of Count I of Senator Russell's complaint—is not an injury in fact for standing purposes. *See id.* at 1205-06 (rejecting the argument "that the defendants' failure to comply with these laws deprived the Senator of the effectiveness of his vote on the legislation and that the deprivation constitutes a legally cognizable injury"); *Goldwater*, 617 F.2d at 702 (stating a test for legislator standing that distinguishes between "complete withdrawal or nullification of a voting opportunity" and "a diminution in a legislator's effectiveness, subjectively judged by him or her, resulting from Executive action withholding information or failing to obey a statute enacted through the legislator's vote, where the plaintiff-legislator still has power to act through the legislative process to remedy the alleged abuses," the latter of which is insufficient to confer standing on the legislator); *Daughtrey v. Carter*, 584 F.2d 1050, 1057 (D.C. Cir. 1978) (no legislator standing to challenge executive nonenforcement of a law); *Harrington v. Bush*, 553 F.2d 190, 203-04, 210, 213-14 (D.C. Cir. 1977) (no legislator standing to sue the executive for disobeying laws for which the legislator

9

had voted); *Harrington v. Schlesinger*, 528 F.2d 455, 459 (4th Cir. 1975) (no legislator standing to enjoin the President from spending money in violation of legislation restricting the use of certain appropriations).

The principal reason for this is that once a bill has become law, a legislator's interest in seeing that the law is followed is no different from a private citizen's general interest in proper government. *See Chiles*, 865 F.2d at 1205-06 ("Senator Chiles is basically arguing that as a Senator he has a right to see that the laws, which he voted for, are complied with. Such a claim of injury, however, is nothing more than a generalized grievance about the conduct of the government.") (citation and internal quotation marks omitted); *Bush*, 553 F.2d at 213-14 ("[S]ince the impact of the illegality is shared by all citizens, appellant's complaint about the administration of the CIA Act becomes a generalized grievance about the conduct of government, which lacks the specificity to support a claim of standing."); *Schlesinger*, 528 F.2d at 459 ("Once a bill has become law, however, their interest is indistinguishable from that of any other citizen."); 13A Charles Alan Wright et al., *Federal Practice & Procedure* § 3531.11, at 37 & n.59 (2d ed. 1984) (collecting cases). The Supreme Court has "consistently held that a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 573-74 (1992) (citing cases).

10

The courts have drawn a distinction, however, between a public official's mere disobedience of a law for which a legislator voted—which is not an injury in fact—and an official's "distortion of the process by which a bill becomes law" by nullifying a legislator's vote or depriving a legislator of an opportunity to vote—which is an injury in fact. *See United Presbyterian Church in the U.S.A. v. Reagan*, 738 F.2d 1375, 1382 (D.C. Cir. 1984) (quoting *Moore v. U.S. House of Representatives*, 733 F.2d 946, 952 (D.C. Cir. 1984)); *Goldwater*, 617 F.2d at 702. In arguing that this case fits into the latter category, Senator Russell relies primarily on our decision in *Dennis v. Luis*, 741 F.2d 628 (3d Cir. 1984), the Supreme Court's decision in *Coleman v. Miller*, 307 U.S. 433 (1939), and the decision of the New York Court of Appeals in *Silver v. Pataki*, 96 N.Y.2d 532 (N.Y. App. 2001). Those cases are readily distinguishable from the present case, however, in that the challenged actions in those cases left the plaintiffs with no effective remedies in the political process.[4] *See Goldwater*,

---

[4]"*Coleman* stands, at most, . . . for the proposition that legislators whose votes would have been sufficient to defeat (or enact) a specific legislative Act have standing to sue if that legislative action goes into effect (or does not go into effect) on the ground that their votes have been completely nullified." *Raines v. Byrd*, 521 U.S. 811, 823 (1997).

In *Dennis*, we held that a group of legislators had standing to challenge the appointment by the Governor of the Virgin Islands of an "acting" Commissioner of Commerce without consulting them, where § 16(c) of the Organic Act, 48 U.S.C. § 1597(c), provided that the appointment of a

11

617 F.2d at 703 (stating, in finding legislator standing to challenge the President's decision to terminate a treaty, "[t]he crucial fact is that, on the record before us, there is no conceivable senatorial action that could likely prevent

---

Commissioner of Commerce was subject to the advice and consent of the Legislature. The plaintiffs in *Dennis* thus alleged that they possessed a specific right under § 16(c) of the Organic Act that the Governor had violated, and they had no clear recourse through the political process.

*Silver v. Pataki* is closer to the present case, but it is not helpful to Senator Russell's cause. In *Silver*, the New York Court of Appeals recognized an injury in fact when a state assembly member alleged that the governor made illegal use of his line item veto power by using it on bills that were not lawfully subject to the line item veto. 96 N.Y.2d at 535. The state assembly member had voted in favor of the bills in question, and the New York Court of Appeals held that the plaintiff had standing. The court rejected the argument that the plaintiff lacked standing because he had the option of persuading a supermajority of his colleagues to override the governor's veto. *Id.* at 541. In *Silver*, the Governor's veto nullified the pending bills and forced the assembly member to try persuade a supermajority of his colleagues to override the governor's veto if he wished to restore the status of the bills as law. Here, by contrast, the Governor's submission of nominations to the Legislature had no effect on the legal status of Act No. 6687, nor did it impose any heightened burden on Senator Russell or his colleagues.

12

termination of the Treaty.").

Here, by contrast, Senator Russell concedes that the Legislature was free to confirm, reject, or defer voting on the Governor's nominees.[5] The consequence of the Governor's late submission of the nominations was thus not to circumvent the Legislature, but to place the decision whether to confirm the nominees directly in their hands. In our view, that fact takes this case out of the category of "vote nullification" cases and places it in the category of cases in which a legislator's alleged injury consists merely of an executive's failure to comply with a law for which he voted. As we have explained, this is not sufficient to meet the requirement of an injury in fact.

Senator Russell resists this conclusion by arguing that the Governor's failure to comply with the deadline in Act No. 6687 injured him, if not in his capacity as a legislator, then in his capacity as "the main proponent of the Supreme Court bill." While it is true that Senator Russell participated in the drafting of Act No. 6687 and may well have worked diligently to secure its passage, we find these facts irrelevant to the question of his standing. Senator Russell points to no authority giving him

---

[5]Senator Russell argues that he and his colleagues were not actually "free" to reject or defer vote on the nominees because the Governor submitted the nominations shortly before a general election, and the senators feared that they would not be reelected if they failed to confirm the judges. Senator Russell points us to no authority, however, entitling him to protection from accountability to the voters on this issue.

special legal status or additional rights arising from his work on Act No. 6687, and we have found none. Any injury to him due to his status as the main proponent of Act No. 6687 is not sufficiently objective to meet the injury-in-fact requirement. *See Metzenbaum v. Brown*, 448 F. Supp. 538, 543 (D.D.C. 1978) (rejecting the argument that two Senators had standing to challenge the executive branch's implementation of a bill for which they voted, by virtue of their active participation in the drafting and passage of the bill); *cf. Chiles*, 865 F.2d at 1206-07 (no standing where a senator's asserted injury was not "objectively discernible"); *Goldwater*, 617 F.2d at 702 (to show an injury in fact, "the plaintiff must point to an objective standard" embodying the harmed interest asserted, as opposed to "a diminution in a legislator's effectiveness, subjectively judged by him or her").

B

In Count II, Senator Russell insists that the Governor's calling of a special session of the Legislature constituted "an unconstitutional usurpation of legislative power by the executive branch," in violation of the separation of powers doctrine. Reply Br. at 2. This is predicated on his contention that Section 7(a) of the Organic Act, 48 U.S.C. § 1573(a), the provision under which the Governor acted, limits the Governor's authority to the calling of special sessions for the purpose of considering legislation.[6] In Senator Russell's view, this leaves to the

---

[6]Section 7(a) provides:

14

Legislature the exclusive power to schedule legislative sessions for considering whether to confirm judicial nominations. It is this legislative power that the Governor allegedly usurped.

We stress at the outset of our standing analysis with respect to Count II that Senator Russell cannot here maintain that the Governor's action in calling a special session impaired his right, or that of his legislative colleagues, to advise and consent regarding judicial nominees. That action afforded the Legislature an additional opportunity to confirm or not confirm, an opportunity of which the Legislature availed itself by unanimously voting to confirm.

Rather, the "usurpation of legislative power" of which Senator Russell complains is the usurpation of the Legislature's power to schedule its own proceedings. Here, too, we perceive no injury to Senator Russell or his colleagues. The Governor's

Regular sessions of the legislature shall be held annually, commencing on the second Monday in January (unless the legislature shall by law fix a different date), and shall continue for such term as the legislature may provide. The Governor may call special sessions of the legislature at any time when in his opinion the public interest may require it. No legislation shall be considered at any special session other than that specified in the call therefor or in any special message by the Governor to the legislature while in session.

15

call for a special session did not force the Legislature to confirm the nominees; nor, as Senator Russell concedes, did it even force them to vote on the nominees. Senator Russell stated at the hearing before the District Court that, in his view, in addition to voting to confirm or reject the nominees, the Legislature could have adjourned immediately without considering the matters the Governor placed before it, or it could have debated the merits of the judicial nominees but ultimately deferred voting on whether to confirm them. Indeed, Senator Russell made two motions during the special session to defer consideration of the nominees, but both motions were rejected by his colleagues.

Senator Russell has one further arrow to his standing bow. He insists that the Governor's action resulted in unique injury to him in his capacity as Chair of the Legislature's Committee on Rules and the Judiciary, who, he testified, has "the discretion to set the confirmation hearing and to submit to the committee a full report on the investigation." JA at 118-19. However, Senator Russell has failed to provide us with a citation to the source of the authority he claims for himself. Based on our research, we are satisfied that it does not arise from the Organic Act or any other statute.[7] While we are willing

---

[7]This is not, therefore, a case like *American Federation of Government Employees v. Pierce*, 697 F.2d 303, 305 (D.C. Cir. 1982). In that case, the D.C. Circuit recognized a legislator's standing to sue as a member of the House Appropriations Committee. In *Pierce*, however, a Congressional statute explicitly gave the Appropriations Committee the right to participate in certain reorganizations of the Department of

16

to assume that the rules of the Legislature grant him the authority to schedule hearings and investigate, we are not willing to assume, without citation to a specific rule, that that authority is not subject to the power of the full Legislature to set its own agenda when it decides to do so. As we have explained, the Legislature here decided to set its own agenda and proceeded to advise and consent by unanimous vote. Under these circumstances, we do not believe that Senator Russell had any "legislative power" to be "usurped." We therefore hold that he has not alleged an injury in fact and that he lacks standing to bring both counts of his complaint.

## III

Finally, we decline Senator Russell's invitation to rule on the dispute between the Governor and the Legislature regarding the location of the Supreme Court. As explained above,[8] that dispute is the subject of a separate action that is being actively litigated and is now pending in the Appellate Division of the District Court. It is not part of Senator Russell's complaint, and this Court has already denied Senator Russell's motion to

---

Housing and Urban Development (HUD). *Id.* The claim of the members of the committee that the HUD Secretary unlawfully proceeded with a reorganization without them was thus a claim of injury to "a particular interest in law as it relates to their authority."

[8] *See* fn.1 *supra*.

17

consolidate this appeal with any appeal that might come from the Appellate Division. In arguing that this Court should nonetheless address that issue, Senator Russell notes that the District Court asked the lawyers in this case to be prepared to discuss, at its hearing on the Governor's motion to dismiss, all issues related to the Supreme Court, and he argues that the issues in the other case are "inextricably intertwined with the issues on appeal herein." We are unpersuaded. In light of our disposition of this appeal, it is plainly not necessary to address the legality of the legislation locating the Supreme Court on St. Croix. Senator Russell's request for a ruling from this Court regarding the location of the Virgin Islands Supreme Court is a request for an advisory opinion, which is beyond our authority to grant. *See Armstrong World Indus. v. Adams*, 961 F.2d 405, 410 (3d Cir. 1992) ("Article III, section 2 . . . stands as a direct prohibition on the issuance of advisory opinions.").

IV

For the foregoing reasons, we will affirm the January 4, 2007, order of the District Court insofar as it dismissed Count II for want of jurisdiction. We will vacate that order insofar as it dismissed Count I for failure to state a claim and remand with instructions to dismiss that count as well for want of jurisdiction.