**HON. LEON A. KENDALL, Appellee**

**v.**

**SEN. RONALD E. RUSSELL; LUIS MORALES; ROBERT O'CONNOR, JR.; ROBERT MALLOY and BRUCE MARSHACK, in their capacity as Members of the Virgin Islands Commission on Judicial Disabilities, Sen. Ronald E. Russell; Luis Morales; Robert Malloy; Bruce Marshack, Appellants**

No. 08-1212

United States Court of Appeals for the Third Circuit

July 13, 2009

MARIA T. HODGE, Hodge & Francois, Charlotte Amalie, St. Thomas, USVI, *For the Appellants.*

HOWARD M. COOPER, JULIE E. GREEN, Todd & Weld, Boston, MA, *For the Appellee.*

FISHER, JORDAN and STAPLETON, *Circuit Judges*

## OPINION OF THE COURT

(July 13, 2009)

JORDAN, *Circuit Judge*

Leon A. Kendall, a judge of the Superior Court of the Virgin Islands, filed this suit against members of the Virgin Islands Commission on Judicial Disabilities (the "Commission"), alleging that Virgin Islands Act No. 3876 (the "Commission Act" or the "Act"), which empowers the Commission to remove judges of the Superior Court, violates the separation of powers principle inherent in the Revised Organic Act of 1954 (the "ROA"). 48 U.S.C. §§ 1541 *et seq*. The Commission asked the District Court to abstain from hearing the case, but the Court declined and entered judgment for Judge Kendall, declaring that the Commission Act does indeed violate the ROA and enjoining the Commission members from initiating or continuing removal proceedings against Judge Kendall. Now, four members of the Commission, Ronald A. Russell, Bruce Marshack, Robert Molloy, and Luis Morales, appeal the District Court's judgment.[1] Because we conclude that the District Court did not err by

---

[1] Defendant and Commission member Robert O'Connor did not join in the appeal.

refusing to abstain and that the legislation at issue is in violation of the ROA, we will affirm.

## I. Background

### A. Establishment of the Commission

On September 9, 1976, the Legislature of the Virgin Islands passed the Commission Act, which instituted significant changes involving the judicial system of the Virgin Islands. One of those changes was the creation of the Commission. V.I. CODE ANN. tit. 4, §§ 651-59. The Act grants the Commission the "power to retire or remove a magistrate or judge of the Superior Court of the Virgin Islands" and lists as grounds for removal conviction of a felony, willful misconduct in office, willful and persistent failure to perform judicial duties, a mental or physical disability that seriously interferes with the performance of judicial duties, or any other conduct that is prejudicial to the administration of justice or brings the judicial office into disrepute. *Id.* §§ 651, 656.

The Act further specifies that the Commission is to be composed of two members appointed by the Governor of the Virgin Islands, two members appointed by the President of the Virgin Islands Legislature, and one member appointed by the Board of Governors of the Virgin Islands Bar Association. *Id.* § 652. Members of the judiciary are not eligible to serve on the Commission. *Id.*

The Commission may investigate a judge's health or conduct on its own initiative or following a complaint. *Id.* § 657(b)(1). Before the Commission can issue an order affecting a judge's tenure, it must hold a hearing. *Id.* A judge who is subject to a Commission hearing must be given notice of the hearing and of the nature of the matters under inquiry. *Id.* § 657(b)(2). The judge is entitled to attend the hearing, be represented by counsel, present evidence on his own behalf, and confront and cross-examine witnesses. *Id.* Following a hearing, the Commission makes determinations regarding the conduct or health of the judge concerned. *Id.* § 657(b)(3). The concurrence of at least four members is required for the Commission to make a determination for removal or retirement. *Id.*

According to the terms of the Act, if the Commission makes a determination for removal or retirement, it must file an order in the District Court of the Virgin Islands. *Id.* §§ 656(a), (b), 657(b)(3). The Act provides that the judge who is the subject of the order may then petition

the District Court to review the order. *Id.* § 659. After reviewing the proceedings that give rise to the order, the District Court is ostensibly empowered to affirm, reverse, or remand the order to the Commission for further proceedings. *Id.* The District Court is directed to follow the rules of procedure governing appeals in civil actions, and its determinations are to be final and conclusive. *Id.*

## B. Judge Kendall and the Commission

In 2003, Leon A. Kendall was appointed to serve as a judge of the Superior Court of the Virgin Islands. In June 2007, Judge Kendall received a letter informing him that the Commission had received and planned to investigate two complaints against him. The Commission served Judge Kendall with two documents on November 16, 2007, each styled as an "Order and Notice of Hearing," and each bearing a distinct case number and hearing date.

Judge Kendall considered the pending hearings to be "continuing looming threats" to his judicial independence.[2] (*See* App. II at 66.) On October 4, 2007, he filed a complaint in the District Court of the Virgin Islands against the members of the Commission in their official capacities. In his suit, Judge Kendall sought a judgment declaring that the provisions of the Act granting the Commission the power to investigate and remove Superior Court judges constitute a violation of the separation of powers principle inherent in the ROA. He also petitioned the Court to enjoin members of the Commission from commencing or continuing removal proceedings against him.

The next day, October 5, Judge Kendall filed a Motion for a Preliminary Injunction. The District Court consolidated the hearing on the motion with a trial on the merits and heard testimony and arguments on December 13, 2007. On January 16, 2008, the Court issued a judgment in favor of Judge Kendall, holding that the provisions of the Act empowering the Commission to remove Superior Court judges violate the ROA, and enjoining Commission members from initiating or continuing removal proceedings against Judge Kendall.

---

[2] In his testimony at the Preliminary Injunction hearing ultimately held before the District Court, Judge Kendall spoke of the "complaints" against him as the threat to his judicial independence, but the context of his remarks indicates he was speaking of proceedings before the Commission generally rather than the complaints alone. (App. II at 63-67.)

The Court also issued a thorough memorandum opinion explaining its decision. It began by determining that it had jurisdiction over the case and that Judge Kendall had standing to bring his claims. It then turned to whether it had discretion to abstain from considering the claims because of the ongoing Commission proceedings. After analyzing the case law on *Younger* abstention,[3] the Court focused on whether the removal proceedings provided an opportunity for judicial review of Commission orders and a forum for Judge Kendall to raise his separation of powers claims. The Court noted that, under the Act, Commission orders do not take effect until they are approved by the District Court. The Court held, however, that it actually had no jurisdiction to review such orders and that the Legislature of the Virgin Islands could not expand the jurisdiction of a federal court. Consequently, the District Court concluded that it could not review the Commission's orders and that judicial review of Commission proceedings is thus effectively unavailable. According to the District Court, since the Commission proceedings are not subject to judicial review, they are not judicial in nature and do not provide an adequate forum for Judge Kendall to raise his separation of powers concerns. Based on that reasoning, the Court determined that the *Younger* factors weighed against abstention and in favor of reviewing Judge Kendall's claims.

Next, the Court turned to the merits of those claims. It began by establishing that, for a local legislature to have the power to remove a judge, the legislature must be expressly granted that power by some legal authority, usually a state constitution. Noting that the ROA serves as the Constitution of the Virgin Islands, the Court reviewed the relevant portions of the ROA and concluded that it does not grant the Legislature power to remove judges. Without having such power itself, the Legislature could not delegate it to the Commission. Hence, the Court

---

[3] As is more fully described herein, *Younger* abstention is a legal doctrine granting federal courts discretion to abstain from exercising jurisdiction over a claim when resolution of that claim would interfere with an ongoing state proceeding. *See Younger v. Harris*, 401 U.S. 37, 41, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971) ("[W]e have concluded that the judgment of the District Court, enjoining appellant Younger from prosecuting under these California statutes, must be reversed as a violation of the national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances."). Younger applies in the context of a territory's proceedings as well. *See Maymo-Melendez v. Alvarez-Ramirez*, 364 F.3d 27, 34 (1st Cir. 2004) (holding that *Younger* abstention doctrine was triggered by local administrative proceedings in Puerto Rico).

concluded, the portions of the Act establishing the Commission violate the ROA.

Four members of the Commission ("Appellants") filed a timely notice of appeal. They assert that the District Court erred in refusing to abstain from ruling while there were proceedings before the Commission. On a related point, they argue that the District Court erred in construing the Act as not providing for judicial review of Commission orders. Finally, they contend that the District Court erred in holding that the provisions of the Act granting the Commission power to remove Superior Court judges are invalid and unenforceable under the ROA.

## II. Discussion[4]

We first consider abstention and then turn to the validity of the contested provisions of the Act.

### A. Abstention

■ "A federal district court has discretion to abstain from exercising jurisdiction over a particular claim where resolution of that claim in federal court would offend principles of comity by interfering with an ongoing state proceeding." *Addiction Specialists, Inc. v. Twp. of Hampton,* 411 F.3d 399, 408 (3d Cir. 2005) (citing *Younger v. Harris,* 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971)). As noted earlier, the *Younger* doctrine allows a district court to abstain, but that discretion can properly be exercised only when (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims. *Matusow v. Trans-County Title Agency, LLC,* 545 F.3d 241, 248 (3d Cir. 2008). It is beyond dispute that the second element of that tripartite test is present in this case. Judicial accountability and the regulation of the judiciary are obviously important state interests, and the government of the Virgin Islands is rightly concerned with the

---

[4] As the ROA is a federal statute, the District Court had federal question jurisdiction in this case pursuant to 28 U.S.C. § 1331. We have appellate jurisdiction under 28 U.S.C. § 1291. While we review the District Court's decision on abstention for abuse of discretion, the underlying legal questions that determine whether the Court had discretion to abstain are subject to plenary review. *IFC Interconsult, AG v. Safeguard Int'l Partners, LLC,* 438 F.3d 298, 305 (3d Cir. 2006). We also exercise plenary review over issues of statutory interpretation. *E.I. DuPont de Nemours & Co. v. United States,* 508 F.3d 126, 132 (3d Cir. 2007).

competence and integrity of the men and women who serve on the Territory's bench. But that satisfies only one of the three requirements for *Younger* abstention. The other two elements, the first and third prongs of the *Younger* test, are missing here.

## 1. Commission Proceedings Are Not Judicial

■ In determining whether state proceedings are judicial in nature, we have identified some "traditional indicia of a judicial action." *Coruzzi v. New Jersey*, 705 F.2d 688, 690 (3d Cir. 1983). For example, proceedings may be judicial in nature if they are initiated by a complaint, adjudicative in nature, governed by court rules or rules of procedure, or employ legal burdens of proof. *See id.* In addition, and of particular significance in this case, the Supreme Court has indicated that the availability of judicial review is an important element of judicial proceedings. *See Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 433, 437, 102 S. Ct. 2515, 73 L. Ed. 2d 116 (1982) (citing the availability of review by the New Jersey Supreme Court as a significant factor in determining that local attorney disciplinary proceedings were judicial in nature); *see also Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619, 627, 106 S. Ct. 2718, 91 L. Ed. 2d 512 (1986) (characterizing the holding in *Middlesex* as being "that federal courts should refrain from enjoining lawyer disciplinary proceedings initiated by state ethics committees *if* the proceedings are within the appellate jurisdiction of the appropriate State Supreme Court" (emphasis added)).

The Act sets forth several prescriptions for the Commission that make its work akin to judicial proceedings. The Commission may not enter an order affecting a judge's tenure without holding a hearing. V.I. CODE ANN. tit. 4, § 657(b)(1). A judge under investigation must be given notice of any hearing into his conduct and the nature of the matters under inquiry. *Id.* § 657(b)(2). In addition, the judge has the right to attend hearings, be represented by counsel, present evidence on his own behalf, and confront and cross-examine any witnesses against him. *Id.*

■ The Act also purports to provide for judicial review by requiring that Commission orders affecting judicial tenure be submitted to the District Court for review and by stipulating that any "[d]etermination by the district court shall be final and conclusive." *Id.* § 659. That provision of the Act, however, presents a conspicuous problem. "Federal courts are courts of limited jurisdiction. They possess only that power authorized by

1029

Constitution and [federal] statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994) (citations omitted). Despite laudatory intention, the Legislature of the Virgin Islands cannot expand the jurisdiction of the District Court. *See Estate of Thomas Mall, Inc. v. Territorial Court of the V.I.*, 923 F.2d 258, 261 (3d Cir. 1991) ("Lest we be swayed by the fact that the Virgin Islands statutory provisions purport to grant jurisdiction in the District Court, the Territorial Court points out correctly that the Virgin Islands legislature has no power to do that. Only Congress has the power to determine the jurisdiction of the District Court of the Virgin Islands under Article IV of the United States Constitution."). It follows that, regardless of whether the Act calls for District Court review of Commission orders, the District Court can only exercise such review if that jurisdiction is grounded in federal law.

■ Appellants contend that there is a foundation in federal law for the jurisdiction they claim exists, or at least existed when the Act was passed. They base their argument on section 1613a(a) of the ROA, which provides that, prior to the authorized establishment of a local appellate court, "the District Court of the Virgin Islands shall have such appellate jurisdiction over the courts of the Virgin Islands established by local law to the extent now or hereafter prescribed by local law." 48 U.S.C. § 1613a(a).[5] The flaw in the Appellants' reasoning is that the ROA only granted the District Court "appellate jurisdiction over *the courts* of the Virgin Islands" and made no mention of any body like the Commission.[6] *Id.* (emphasis added). Although some aspects of Commission proceedings

---

[5] The appellate court anticipated by the ROA was formed when the Virgin Islands Legislature provided for the establishment of the Virgin Islands Supreme Court. Pursuant to the Act of September 30, 2004, No. 6687, § 13(a), 2004 V.I. Sess. Law 190; 48 U.S.C. § 1613a(d), that court now reviews all appeals from decisions of the courts of the Virgin Islands.

[6] Endeavoring to justify the Legislature's effort to expand the jurisdiction of the District Court, the dissent says, "the Legislature was simply acknowledging that, at the time of the Act's adoption, the V.I. District Court functioned as the proper appellate tribunal over territorial courts, and was not granting the V.I. District Court power it did not already have." Whether the District Court had appellate power over local administrative bodies, however, is a question that cannot be answered by mere assertion. The dissent cites nothing in support of its statement on this point, and the pertinent authority indicates that the District Court never had the power that the Legislature and the dissent claim for it. Again, by its terms, the ROA only grants the District Court "appellate jurisdiction over *the courts* of the Virgin Islands,"

are judicial in nature, the Commission is plainly not a court. Even the Appellants do not claim that status for the Commission, though they do contend that it falls within the judicial branch. To expand the term "court" to encompass the Commission would move well beyond the ordinary meaning of the word, *see Alaka v. Att'y Gen.*, 456 F.3d 88, 104 (3d Cir. 2006) ("Perhaps the most fundamental principle of statutory construction is that words in a statute must be given their ordinary meaning whenever possible.") (citation omitted), and we decline to take that step.

Appellants next argue that, even if the District Court does not have jurisdiction to review Commission orders, judicial review is nevertheless available before the Virgin Islands Supreme Court. Appellants contend that when the Virgin Islands Supreme Court was created in 2004, the Commission Act was "implicitly or impliedly" amended to provide for Supreme Court review of Commission orders. (Appellants' Opening Br. at 16.) In support of their argument, Appellants cite section 1613a(d) of the ROA, which states, "[u]pon the establishment of the appellate court provided for in section 1611(a) of this title[,] all appeals from the decisions of the courts of the Virgin Islands established by local law not previously taken must be taken to that appellate court." 48 U.S.C. § 1613a(d). According to Appellants, that provision of the ROA shifts responsibility for the review of local court decisions and Commission orders from the District Court to the Supreme Court of the Virgin Islands.

Appellants bolster their argument by directing us to the process that the Legislature recently established for the removal of Justices of the Virgin Islands Supreme Court.

> Pursuant to title 4 V.I.C. chapter 36, a justice of the Supreme Court shall be involuntarily retired from office when the Commission on Judicial Disabilities determines that the justice suffers from a mental or physical disability, including habitual intemperance, which prevents, or seriously interferes with, the proper performance of his judicial duties, and the Commission files in the Supreme Court an order of involuntary retirement and the order is affirmed on appeal or the time within which an appeal may be taken from the order has expired.

---

48 U.S.C. § 1613a(a) (emphasis added), and not even the Appellants claim that the Commission is a court.

V.I. CODE ANN. tit. 4, § 25. Appellants claim that this section serves as evidence of the Legislature's intent to provide for Supreme Court review of all Commission orders, including those concerning Superior Court judges, even if the provisions of the Commission Act regarding removal of Superior Court judges have not been explicitly amended to reflect that intent.

■ The argument is not without persuasive force, since it may well be that the Legislature intended Commission orders regarding Superior Court judges to be reviewed by the Supreme Court of the Virgin Islands. But the fact remains that there is simply no legislation saying that. The Commission Act itself unambiguously charges the District Court with that task. For us to read the language otherwise or to conclude that the Commission Act has been "implicitly or impliedly" amended would be to legislate from the bench, a task we have neither the authority nor the inclination to undertake.[7] It is not a lack of respect for the Legislature that makes us reticent to recognize an implicit amendment to the Act. On the

---

[7] Our dissenting colleague claims that, "[p]ursuant to the Act's language, and following the enactment of [the statute establishing the Virgin Islands Supreme Court], the Commission must file all orders of removal in the [Virgin Islands] Supreme Court, which must affirm any appealed orders before they become effective." (Dissent at Part II.A.2.) That assertion, however, assumes the conclusion of the argument by taking it as given that the Commission Act was amended to provide for appeals from Commission orders to be filed in the Supreme Court of the Virgin Islands. It is precisely on that point that we disagree. The legislation establishing the territorial Supreme Court does not say or imply any such thing. It can certainly be argued that the legislation should have done so and that, since it does not, the Virgin Islands Legislature ought to take the matter up now, but recognizing what ought to be done does not imbue us with the power to do it. There is unquestionably a practical allure to the dissent's approach, but the end does not justify the extraordinary means the dissent would employ. We have explained that, "[i]f the legislature has not directly amended a statute, it is only in the rarest case that a court should rule the statute amended. To do so is to rule that a statute does not mean what it plainly says." *Galvan v. Hess Oil V.I. Corp.*, 549 F.2d 281, 288, 13 V.I. 636 (3d Cir. 1977). Here the statute authorizing the Commission plainly says that Commission orders are to be reviewed by the District Court, V.I. CODE ANN. tit. 4, §656(a)(2)(C), and that is all it says on the matter. The statute creating the Supreme Court of the Virgin Islands is likewise entirely silent about appeals from the Commission. On this record, we are not persuaded that this is one of those rarest of cases in which an amendment can be said to be implicit.

Nor have our earlier precedents taken the step urged by the dissent. Citing *Walker v. Gov't of the V.I.*, 230 F.3d 82, 43 V.I. 265 (3d Cir. 2000), our dissenting colleague declares that "we have previously encountered the issue of implicit repeal of the V.I. District Court's jurisdiction as a result of the creation of the V. I. Superior Court" and suggests that we are revisiting that issue today because this case presents an "analogous context." (Dissent at II.A.2.) But neither *Walker* nor any other case has ever confronted the question of whether the legislation creating the Supreme Court of the Virgin Islands impliedly gave that Court

contrary, it is our immense respect for the power and function of the Legislature that constrains us to look at the language of the Act, not at what we wish the language were or what we think the Legislature would do if it actually amended the Act.

## 2. Lack of Opportunity to Raise Federal Claims

One consequence of the lack of opportunity for judicial review of Commission decisions is that there is not a meaningful chance for a judge under investigation to raise federal claims. Such an opportunity is a necessity under the third prong of the *Younger* test for abstention. Even if the Commission permitted a judge to advance federal claims — and it is not clear it would — that would not be adequate because, again, without judicial review, the local administrative process alone is not a full and fair opportunity to litigate such claims. *Cf. Middlesex County Ethics Comm.*, 457 U.S. at 433; *Ohio Civil Rights Comm'n*, 477 U.S. at 627 (recognizing that *Younger* abstention may be appropriate when there are ongoing state administrative proceedings, "so long as in the course of those proceedings the federal plaintiff would have a full and fair opportunity to litigate his constitutional claim").

■ We have previously noted that "the third part of the [*Younger*] test 'is satisfied in the context of a state administrative proceeding when the federal claimant can assert his constitutional claims during state-court judicial review of the administrative determination.' " *Zahl v. Harper*, 282 F.3d 204, 210 (3d Cir. 2002) (quoting *O'Neill v. City of Philadelphia*, 32 F.3d 785, 792 (3d Cir. 1994)). An implication of that holding, which we embrace now, is that the absence of judicial review of federal claims means the third part of the *Younger* test has not been satisfied.

---

authority to hear appeals directed to the District Court by the Commission Act. The dissent itself seems to recognize that in the parenthetical following the citation to *Walker*, which describes the holding as being "that the V.I. District Court's original jurisdiction to hear local matters was implicitly repealed by the placement of original jurisdiction over all local civil actions into the hands of the territorial court." (*Id.*) The Commission proceedings are, as no one disputes, administrative; they are not "civil actions."

Ultimately then, while the dissent indicates it is eschewing a meddling in Virgin Islands affairs, we think ours is the more restrained approach. Rather than declaring what we think the Virgin Islands Legislature must have meant, even though it did not say it, we leave it to the Government of the Virgin Islands, through its elected representatives, to decide how appeals from the Commission should be handled.

■ In summary, we conclude that, because the District Court does not have jurisdiction to review Commission orders, and because the Act does not provide for any territorial court review of Commission orders concerning Superior Court judges, there is currently no valid avenue for appellate review of a Commission order affecting someone like Judge Kendall. Since an opportunity for appellate review is a highly significant element of judicial proceedings and would be essential in this case to provide a meaningful opportunity to raise a federal claim, we agree with the District Court that two of the three elements of the test for *Younger* abstention are lacking here. The District Court was, therefore, correct not to abstain from deciding this case.

## B. Validity of the Act

Having concluded that the District Court rightly refused to abstain, we now turn to the Court's decision that the Commission Act violates the separation of powers principle inherent in the ROA.

■ The Constitution grants Congress the authority to "make all needful rules and regulations respecting the territory or other property belonging to the United States." U.S. CONST. art. IV, § 3, cl. 2. Pursuant to that authority, Congress passed the ROA, 48 U.S.C. §§ 1541 *et seq.*, which, as we have noted, serves as the Constitution of the Virgin Islands. *See Brow v. Farrelly*, 994 F.2d 1027, 1032, 28 V.I. 345 (3d Cir. 1993) (citation omitted). The ROA divides the power to govern the territory between a legislative branch, 48 U.S.C. § 1571, an executive branch, *id.* § 1591, and a judicial branch, *id.* § 1611. By organizing the government in that manner, Congress "implicitly incorporated the principle of separation of powers into the law of the territory." *Smith v. Magras*, 124 F.3d 457, 465, 37 V.I. 464 (3d Cir. 1997) (citation omitted).

■ In *Springer v. Philippine Islands*, 277 U.S. 189, 48 S. Ct. 480, 72 L. Ed. 845 (1928), the Supreme Court dealt with an analogous situation. It reviewed the Philippine Organic Act and noted how that act embedded the separation of powers in the territorial government of the Philippines. *Id.* at 199-202 (1928). The Court then articulated the practical effect of the separation of powers principle:

> It may be stated then, as a general rule inherent in the American con-
> stitutional system, that, unless otherwise expressly provided or inci-
> dental to the powers conferred, the Legislature cannot exercise either

executive or judicial power; the executive cannot exercise either legislative or judicial power; the judiciary cannot exercise either executive or legislative power.

*Id.* at 201-02. In short, the separation of powers principle prohibits any branch of government from exercising powers that are reserved for the other branches, unless such an exercise is "expressly provided or incidental to the powers" that a branch necessarily has.

The question then becomes whether there is a basis in the ROA, either express or as incidental to a grant of power, for the Legislature to regulate the conduct of judges. The Appellants, of course, say there is. They note that, in the ROA, Congress authorized the Legislature of the Virgin Islands to create local courts. 48 U.S.C. § 1611(a), (b). In the same section, Congress addressed the power to promulgate rules governing those courts:

> The rules governing the practice and procedure of the courts established by local law and those prescribing the qualifications and duties of the judges and officers thereof, oaths and bonds, and the times and places of holding court shall be governed by local law or the rules promulgated by those courts.

*Id.* § 1611(c). Appellants contend that the power to prescribe the qualifications and duties of the judges encompasses the power to remove judges from the bench.

■ We think, however, that their proposed construction of that provision stretches the statutory language beyond its natural and intended meaning. While the ROA does grant the Legislature the authority to prescribe the qualifications of judges, which the Legislature has done,[8]

---

[8] V.I. CODE ANN. tit. 4, § 72, which bears the heading "Selection, appointment, qualifications and salaries of judges," states as follows:

(a) The judges of the Superior Court shall be appointed by the Governor with the advice and consent of the Legislature. Judges so appointed shall continue in office until their successors are appointed and confirmed or until they are renominated and confirmed, but in no event shall judges remain in office more than 120 days after the expiration of their terms unless they have been renominated and confirmed.

(b) To be eligible for nomination for appointment as a judge of the Superior Court, a person must be a member in good standing of the Virgin Islands Bar and shall have been engaged in the active practice of law for not less than five years immediately prior to his

there is no indication that Congress intended that authority to include the power to remove judges. The ROA itself leads to the opposite conclusion. In it, Congress demonstrated a clear understanding of how to provide for the removal of government officials. The ROA expressly provides that the President of the United States has the power to remove Virgin Islands district court judges, 48 U.S.C. § 1614(a), that the Governor of the Virgin Islands has the power to remove the heads of executive departments, *id.* §§ 1591, 1597(c), and that the people of the Virgin Islands have the power to remove any elected official by recall, *id.* § 1593(a). The removal power so plainly provided in those parts of the ROA is conspicuously absent in the provision authorizing the Legislature to create local courts and prescribe the qualifications and duties of local judges. *Id.* § 1611(c).

 Moreover, we think it extremely doubtful that Congress, in developing the ROA, would ignore that the power to remove officers from a coordinate branch of government is expressly established in the United States Constitution, *see, e.g.*, Art. I, § 2, cl. 5 ("The House of Representatives . . . shall have the sole power of impeachment."); Art. I, § 3, cl. 6 ("The Senate shall have the sole power to try all impeachments."); Art. I, § 3, cl. 7 ("Judgment in cases of impeachment shall not extend further than to removal from office, and disqualification to hold and enjoy any office of honor, trust or profit under the United States . . . ."), and is not simply left to inference or presumption. We believe Congress would have followed that pattern or otherwise been plain about its intention, had it meant for the Virgin Islands Legislature, operating under a regime of separated powers, to have authority to remove judges.

 Appellants next argue that the Legislature did not violate the principle of separation of powers in establishing the Commission because the Commission itself is part of the judicial branch. Even if inconsistent with the rest of their arguments about the exercise of legislative power, that contention at least has the merit of being in tune with the widespread understanding that the authority to discipline judges is fundamentally a

---

nomination, of which not less than three years shall have been in the Virgin Islands and for appointment as a judge in the Family Court Division, the person must also meet the qualifications established in section 171(c).

(c) The judges of the Superior Court shall be officers of the Government of the Virgin Islands . . . . No judge's compensation shall be reduced during his term of office without his consent.

judicial power. *See, e.g., In re Petition of Judicial Conduct Comm.*, 151 N.H. 123, 855 A.2d 535, 539 (N.H. 2004) ("[T]he power to regulate the conduct of judges . . . is a judicial power."); *In re Dunleavy*, 838 A.2d 338, 344 (Me. 2003) ("The judicial power . . . includes the authority to regulate the professional conduct of judges.") (citations omitted); *In re Complaint Concerning Kirby*, 350 N.W.2d 344, 347 (Minn. 1984) ("This court has always had an existing inherent power to discipline judges. . . ."). But the claim that the Commission is part of the judicial branch is belied by both the ROA and the Virgin Islands Code.

In the ROA, Congress explicitly granted the judicial power of the Virgin Islands to certain enumerated bodies: "The judicial power of the Virgin Islands shall be vested in a court of record designated the 'District Court of the Virgin Islands' established by Congress, and in such appellate court and lower local courts as may have been or may hereafter be established by local law." 48 U.S.C. § 1611(a). Pursuant to that grant of power, the Virgin Islands Legislature has created local courts and listed which entities exercise the judicial power of the Virgin Islands:

> The judicial power of the Territory is vested in a court of general jurisdiction created by section 21 of the Revised Organic Act of the Virgin Islands, approved July 22, 1954, as amended, designated the 'District Court of the Virgin Islands', and in courts of local jurisdiction to be designated the 'Superior Court of the Virgin Islands' and the court of last resort established pursuant to section 21(b) of the Revised Organic Act, 'The Supreme Court of the Virgin Islands.' Each court is a court of record.

V.I. CODE ANN. tit. 4, § 2. Not surprisingly, since it is not a court, the Commission is not listed in either the ROA or the Virgin Islands Code as an entity that exercises judicial power.

The Commission Act itself also undercuts Appellants' argument by explicitly prohibiting those "who are serving in any capacity in any court in the Virgin Islands" from being selected as members of the Commission. *Id.* § 652(a). In addition, as explained above, the Act currently provides no valid avenue for judicial review of Commission orders. Since the Commission is not a court and since judges can neither sit on the Commission nor review its findings or proceedings, it is quite plainly not a part of the judicial branch.

██ There is thus no express grant of authority for the Legislature to exercise judicial power through the creation of the Commission. Moreover, the Appellants have not advanced an argument that somehow the disciplining of the judiciary is incidental to legislative power.[9] Any such argument would be dubious at best, since it is difficult to imagine a legislative function that incidentally involves directly regulating the officers of an independent branch of government.[10]

██ Because the Legislature purported to authorize the Commission to exercise the power to remove judges without itself having such power, we agree with the District Court that the Commission Act violates the separation of powers principles inherent in the ROA.

## III. Conclusion

For the foregoing reasons, we conclude that the District Court was correct to not abstain from hearing Judge Kendall's claims and to hold that the provisions of the Act empowering the Commission to remove Superior Court judges violate the separation of powers principle of the ROA. In reaching that conclusion, we do not hold that Superior Court judges are beyond discipline or removal in the Virgin Islands. The territorial judiciary has inherent authority to regulate the conduct of its judges, the limits of which authority we do not now consider. Similarly, because the issue is not before us, we do not now consider whether the Commission Act would pass muster under the ROA if Commission orders

---

[9] Citing to *Smith v. Magras*, 124 F.3d at 466, Appellants argue that the authority to discipline judges may be shared between the judiciary and the legislature. In *Magras*, we stated that the ROA "envisions the possibility of the sharing of power over the regulation of attorneys between the Virgin Islands courts and the Virgin Islands legislature, at least to the extent of imposing a license fee." *Id. Magras* does not suggest, however, that the legislature and the judiciary share overlapping powers to discipline judges. To the contrary, our holding in *Magras* was based in part on our determination that the attorney licensing scheme posed a minimal interference on the judiciary's power to regulate attorneys. *Id.* at 467. We recognized that our outcome may have been different if the challenged action was one which permitted the legislature to "disbar a delinquent attorney or to regulate his professional practice, judgment, or activity." *Id.* at 465. Our holding in *Magras* thus does not contemplate the legislature having authority to discipline attorneys, much less its having authority to discipline judges.

[10] We are careful to distinguish here between purely legislative functions and special checks and balances which an organic document may entrust to the legislature. So, for example, as we have previously noted, the impeachment powers that Congress wields are expressly granted by the United States Constitution and are not incidental to Congress's legislative functions.

were subject to review by the Supreme Court of the Virgin Islands, though we do encourage the Virgin Islands' Legislature to take up the question of how appeals from such orders should be handled. We now hold only that the Commission Act in its present form violates the separation of powers principle of the ROA, and, accordingly, we will affirm the judgment of the District Court.

FISHER, *Circuit Judge*, dissenting

The majority concludes that the District Court was correct in declining to abstain under *Younger* from reaching the merits of Judge Kendall's appeal, and that the District Court properly held that the Virgin Islands Legislature (the "Legislature") violated the separation of powers principle of the Virgin Islands Revised Organic Act of 1954 (the "ROA") in enacting Act 3876 (the "Act"), thereby empowering the Commission on Judicial Disabilities (the "Commission") to remove judges from the Superior Court of the Virgin Islands. I respectfully dissent. In my view, the District Court should have abstained under *Younger* principles, which require federal courts to refrain from interfering with ongoing state or territorial proceedings, and therefore should not have reached the merits of the instant case.

**I.**

The ROA states that "[t]he judicial power of the Virgin Islands shall be vested in a court of record designated the 'District Court of the Virgin Islands' established by Congress, and in such appellate court and lower local courts as may have been or may hereafter be established by local law." 48 U.S.C. § 1611(a). The ROA provides that the District Court of the Virgin Islands has appellate jurisdiction over the territorial courts of the Virgin Islands, *id.* § 1613a(a), but that, upon the Legislature's establishment of a local appellate court, "all appeals from the decisions of the courts of the Virgin Islands established by local law not previously taken must be taken to that appellate court."[11] *Id.* § 1613a(d). The Legislature created the Supreme Court of the Virgin Islands (the "V.I.

---

[11] I will refer to the Appellate Division of the District Court of the Virgin Islands, which previously had jurisdiction to review appeals from Virgin Islands territorial courts, as the "V.I. District Court" throughout this opinion. The V.I. District Court continues to have jurisdiction to decide the same types of cases as any typical federal district court (e.g., federal question and diversity cases).

Supreme Court") on October 29, 2004, pursuant to Act 6687, which reads in part: "The Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law."[12] V.I. CODE ANN. tit. 4, § 32(a); *see also id.* §§ 32-33. Thus, the Virgin Islands territorial judicial system now includes the Superior Court and the V.I. Supreme Court. Consequently, the V.I. District Court will cease to serve as an appellate tribunal once it finishes its review of any appeals taken prior to the passage of Act 6687. *See* 48 U.S.C. § 1613a(d).

The ROA also provides that "[t]he rules governing the practice and procedure of the courts established by local law and those prescribing the qualifications and duties of the judges and officers thereof . . . shall be governed by local law or the rules promulgated by those courts." *Id.* § 1611(c). Correspondingly, the Legislature adopted the Act on September 9, 1976, which created, inter alia, the Commission and granted it the power to initiate removal proceedings against territorial judges "[o]n its own initiative, or upon complaint of any person" under certain circumstances. V.I. CODE ANN. tit. 4, § 657(b)(1); *see also id.* § 656(a)(2). The Act further states that "such removal . . . become[s] effective upon affirmance of an appeal from an order of removal filed in the district court by the Commission (or upon expiration of the time within which such an appeal may be taken)." *Id.* § 656(a)(2)(C). Once the Commission files an order of removal or involuntary retirement, the aggrieved judge "shall have twenty days within which to petition the district court to review such order," in which case the court "shall review the proceedings giving rise to such order and shall either affirm or reverse the order or remand the cause to the Commission for further proceedings in accordance with its order." *Id.* § 659. During this process, the reviewing court shall follow the "[r]ules of procedure governing appeals in civil actions." *Id.* Thus, the ROA gave the Legislature the authority to regulate the conduct of the

---

[12] Although the majority concludes that the Commission is not a "court" within the meaning of 48 U.S.C. § 1613a(d), which lists the bodies over which the V.I. District Court has jurisdiction, *see* Majority Op. at Part II.A.1, I believe this does not end our inquiry. Given the express provision for appellate review of Commission decisions in the Act, I would hold that Act 6687 granted the V.I. Supreme Court jurisdiction over Commission decisions when it stated that the V.I. Supreme Court has jurisdiction "over all appeals arising from final judgments, final decrees or final orders of the Superior Court, *or as otherwise provided by law.*" V.I. CODE ANN. tit. 4, § 32(a) (emphasis added); *see also* discussion *infra* Part II.A.2.

local judiciary, which it exercised by creating the Commission, and the ROA also established the V.I. District Court as the court with jurisdiction over local matters until the creation of territorial courts.

## II.

The U.S. Supreme Court, in *Younger v. Harris*, 401 U.S. 37, 41-43, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971), held that, absent extraordinary circumstances, federal courts must abstain from enjoining pending state criminal prosecutions, based on principles of equitable relief, federalism, and comity.[13] *Younger* "and its progeny espouse a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431, 102 S. Ct. 2515, 73 L. Ed. 2d 116 (1982). "The policies underlying Younger are fully applicable to noncriminal judicial proceedings when important state interests are involved. The importance of the state interest may be demonstrated by the fact that the noncriminal proceedings bear a close relationship to proceedings criminal in nature . . . ." *Id.* at 432 (citations omitted); *see also Zahl v. Harper*, 282 F.3d 204, 208-09 (3d Cir. 2002) (stating that "the national policy against enjoining pending state court proceedings has since been extended to noncriminal judicial proceedings" and administrative proceedings). *Middlesex* specifically extended *Younger* principles to administrative proceedings (in that case, state attorney disciplinary proceedings). 457 U.S. at 425.

As the majority notes, "[a]bstention under *Younger* is appropriate only if (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims." *Schall v. Joyce*, 885 F.2d 101, 106 (3d Cir. 1989) (citing *Middlesex*, 457

---

[13] Our sister courts of appeals have recognized that *Younger* abstention principles apply in territorial proceedings as well. *See, e.g., Maymo-Melendez v. Alvarez-Ramirez*, 364 F.3d 27, 34 (1st Cir. 2004) (applying *Younger* abstention principles to administrative proceedings in Puerto Rico); *see also Att'y Gen. of Guam v. Torres*, 419 F.3d 1017, 1022 (9th Cir. 2005), *withdrawn sub nom. as moot, Att'y Gen. of Guam v. Thompson*, 441 F.3d 1029 (9th Cir. 2006) (holding that "proceedings in Guam's courts may be treated as 'state judicial proceedings,'" and therefore applying *Younger* abstention principles). I therefore undertake my analysis much as we would under any traditional argument that we should abstain pursuant to *Younger*.

U.S. at 432). My assessment of these three factors in the context of the instant appeal leads me to conclude that the District Court erred by not abstaining.

## A.

The first *Middlesex* factor is whether "there are ongoing state proceedings that are judicial in nature." *Id.* For an ongoing state action that is not in a typical court setting, some "traditional indicia of a judicial action" include the filing of a complaint to initiate a removal proceeding against a state court judge, using rules of procedure, employing a burden of proof, and having the qualities of a proceeding "adjudicative in nature." *Coruzzi v. New Jersey*, 705 F.2d 688, 690 (3d Cir. 1983). The availability of appellate review of the proceeding by a state court is an additional indicia of a judicial action. *Zahl*, 282 F.3d at 209. We have further made clear that state administrative proceedings may be judicial in nature. *Id.* I will first discuss the "traditional indicia" mentioned in *Coruzzi* and then turn to the availability of judicial review, at the center of this case.

## 1.

As noted earlier, removal proceedings can be initiated "upon complaint of any person." V.I. CODE ANN. tit. 4, § 657(b)(1). If the Commission begins an investigation into possible misconduct by a judge, it must first hold a hearing, of which the judge must receive notice and at which he shall "be represented by counsel, [and be able to] offer evidence in his own behalf, and confront and cross-examine witnesses against him." *Id.* § 657. The Commission must keep a record of the hearing and may administer oaths; order the inspection of books and records; subpoena witnesses, testimony, or documents; and order depositions. *Id.* Additionally, all of the Commission's expenses and its members' salaries are paid from funds appropriated to the judiciary and it has access to judicial facilities and employees. *Id.* § 655. These aspects of the Commission overlap substantially with the "traditional indicia of a judicial action" identified in *Coruzzi* and strongly suggest that the Commission's proceedings are "adjudicative in nature."

## 2.

Moreover, judicial review of the Commission's orders is available. As described in detail below, I believe the judiciary has the power to make

final decisions regarding removal of judges on account of misconduct, "persistent failure to perform judicial duties," or "other conduct which is prejudicial to the administration of justice," because the Act expressly provides that orders of removal "become effective upon affirmance of an appeal from an order of removal filed in the district court by the Commission (or upon expiration of the time within which such an appeal may be taken)." *Id.* § 656(a)(2). Pursuant to the Act's language, and following the enactment of Act 6687, the Commission must file all orders of removal in the V.I. Supreme Court, which must affirm any appealed orders before they become effective. Upon review, the V.I. Supreme Court follows the "[r]ules of procedure governing appeals in civil actions," and must then affirm, reverse, or remand the action to the Commission. *Id.* § 659. Because the majority disagrees that appellate review of Commission decisions exists, I will explain in detail the reasons for my conclusion.

The majority concludes that the Commission cannot meet the *Middlesex* test because judicial review of Commission decisions is unavailable. Judge Kendall argues, and the District Court agreed, that the creation of the V.I. Supreme Court did not amend the Commission's authorizing statute and therefore the V.I. District Court remains the only venue for the Commission to file removal orders. Judge Kendall contends that under *Estate of Thomas Mall, Inc. v. Territorial Court of the Virgin Islands*, 923 F.2d 258, 261 (3d Cir. 1991), the Legislature could not vest jurisdiction for review of Commission orders in the V.I. District Court through the Act because this amounts to an expansion of a federal court's jurisdiction, and only Congress has such power. Following from this, the majority concludes in Part II.A.1 of its opinion that this would amount to an improper expansion of the V.I. District Court's jurisdiction. However, unlike most federal district courts, the V.I. District Court doubled as the court with appellate jurisdiction over purely local matters. Therefore, the Legislature was simply acknowledging that, at the time of the Act's adoption, the V.I. District Court functioned as the proper appellate tribunal over territorial courts, and was not granting the V.I. District Court power it did not already have.

Furthermore, based upon an analysis of our precedent and a plain reading of the ROA at 48 U.S.C. § 1613a(d), I believe the statute authorizing the Commission was implicitly amended upon the creation of the V.I. Supreme Court, and that the Commission must now file all orders

of removal in the V.I. Supreme Court. In *Berne v. Boschulte*, which related specifically to the creation of the Superior Court of the Virgin Islands, the district court acknowledged that "[u]nfortunately, the legislature has never taken the trouble to make technical, conforming amendments to all the code provisions which previously implemented the District Court's local civil jurisdiction." 6 F. Supp. 2d 443, 444, 39 V.I. 217 (D.V.I. 1998). *Berne* then cited several cases, including one of our decisions, recognizing that the V.I. District Court's "divestiture . . . of jurisdiction over all local civil actions has nevertheless repeatedly been recognized." *Id.*; *see also Moravian Sch. Advisory Bd. v. Rawlins*, 70 F.3d 270, 273, 33 V.I. 280 (3d Cir. 1995) ("[B]ecause the amended section [granting the Superior Court original jurisdiction in certain actions] divests the district court of jurisdiction over purely local matters, it also implicitly repealed [the section allowing appeal of administrative actions to the V.I. District Court] as it pertains to local matters.").

Thus, we have previously encountered the issue of implicit repeal of the V.I. District Court's jurisdiction as a result of the creation of the V.I. Superior Court. *See Walker v. Gov't of the V.I.*, 230 F.3d 82, 85, 43 V.I. 265 (3d Cir. 2000) (holding that the V.I. District Court's original jurisdiction to hear local matters was implicitly repealed by the placement of original jurisdiction over all local civil actions into the hands of the territorial court); *see also* 48 U.S.C. § 1613a(a), (d) (providing for the expiration of the V.I. District Court's appellate jurisdiction upon the establishment of a local appellate court). Nonetheless, if we revisit the issue now, in this analogous context, we may find a repeal by implication "if (1) provisions in two acts are in irreconcilable conflict or (2) it is clear that an earlier act was intended to be replaced by a subsequent act completely covering the same subject. In any event, the intention of the legislature to repeal must be clear and manifest." *In re Guardianship of Penn*, 15 F.3d 292, 295, 29 V.I. 396 (3d Cir. 1994) (emphasis and internal quotation marks omitted) (quoting *Gov't of the V.I. v. Mills*, 935 F.2d 591, 596 (3d Cir. 1991)). As my discussion indicates, here I would find the second prong satisfied and that Act 6687 implicitly repealed the V.I. District Court's grant of appellate jurisdiction over Commission decisions.

Finally, *Edwards v. HOVENSA, LLC*, 497 F.3d 355, 49 V.I. 1133 (3d Cir. 2007), provides the clearest support for the logical inference that the V.I. Supreme Court has jurisdiction over all appeals previously within the

appellate jurisdiction of the V.I. District Court. *Edwards* acknowledges that the creation of a territorial appellate court supersedes the appellate division of the V.I. District Court:

> "The Revised Organic Act of 1954 granted the District Court 'appellate jurisdiction to review the judgments and orders of the inferior courts of the Virgin Islands to the extent now or hereafter prescribed by local law.' In 1984, the Revised Organic Act was amended to provide that when the Virgin Islands legislature established an appellate court, that court *would supercede* the appellate division of the District Court with respect to new appeals."
>
> . . .
>
> "The Virgin Islands legislature has now provided for the establishment of the Supreme Court of the Virgin Islands, *see Russell v. DeJongh*, 491 F.3d 130[, 131-33, 48 V.I. 1062] (3d Cir. 2007), and it has repealed the prior statute establishing the Appellate Division of the District Court. The appellate division of the District Court will cease existence when the last case pending is decided."

*Id.* at 359 n.2 (emphasis added in first paragraph) (citations omitted). Here, the District Court erred in concluding that there is no procedure for appellate review of the Commission's findings; on the contrary, the Act has been amended implicitly, thereby requiring the Commission to file any order of removal in the V.I. Supreme Court, and allowing the affected judge to obtain review of the order by the V.I. Supreme Court.

Implicit amendment of the Act is further supported because Act 6687 vests appellate review of Superior Court decisions, and those otherwise provided by law, in the V.I. Supreme Court. This is in accord with the Act, which clearly provides for appellate review of Commission decisions, and naturally called upon the only court that, at the time of the enactment, had appellate jurisdiction over local matters to engage in this review (*i.e.*, the V.I. District Court). *See In re Guardianship of Penn*, 15 F.3d at 296 n.10 ("It is assumed that whenever the legislature enacts a provision it has in mind previous statutes relating to the same subject matter. In the absence of any express repeal or amendment, the new provision is presumed in accord with the legislative policy embodied in those prior statutes." (internal quotation marks omitted) (quoting *Marlowe v. Bottarelli*, 938 F.2d 807, 813 (7th Cir. 1991))). Any contrary interpretation of the

interaction between Act 6687 and the Act would render § 1613a(d) of the ROA meaningless because it specifically provides that all appeals must be taken to the V.I. Supreme Court once it is created, instead of the V.I. District Court. *See United States v. Cooper*, 396 F.3d 308, 312 (3d Cir. 2005) ("It is a well known canon of statutory construction that courts should construe statutory language to avoid interpretations that would render any phrase superfluous.").

In *United States v. Raddatz*, 447 U.S. 667, 100 S. Ct. 2406, 65 L. Ed. 2d 424 (1980), the U.S. Supreme Court heard an appeal that claimed the Federal Magistrates Act ("FMA") violated Article III of the Constitution. The FMA provided that a magistrate judge's proposed findings and recommendations would be subject to a de novo determination " 'by the judge who . . . then [exercises] the ultimate authority to issue an appropriate order.' " *Id.* at 682 (alterations in original) (quoting S. Rep. No. 94-625, at 3 (1976)). Under the FMA, " '[the] authority — and the responsibility — to make an informed, final determination . . . remains with the judge.' " *Id.* (alterations in original) (quoting *Mathews v. Weber*, 423 U.S. 261, 271, 96 S. Ct. 549, 46 L. Ed. 2d 483 (1976)). The U.S. Supreme Court held that the "delegation does not violate Art. III so long as the ultimate decision is made by the district court." *Id.* at 683.

I find the Commission to be similar to the review system upheld in *Raddatz*: it must file orders with the judicial branch, judges subject to removal orders may petition the court for review, and, upon a judge filing a petition, the court must review the proceedings giving rise to the order and then affirm, reverse, or remand the action to the Commission. *See* V.I. CODE ANN. tit. 4, § 659. Further, when hearing the petition, the judiciary must follow the same rules of procedure as those followed in civil actions. *Id.*

As Judge Kendall notes, approximately forty U.S. jurisdictions have judicial review bodies outside the judicial branch. He argues, however, that the powers of those other commissions are "limited to investigating and making a recommendation to a court," which then has "complete plenary review" of any recommendation. But, it is only logical that the V.I. Supreme Court considers the Commission's orders under a de novo

standard.[14] And, as stated above, I would conclude that the final decision on the removal of a judge for misconduct rests in the hands of the judiciary, through the V.I. Supreme Court, and not with the Commission. Accordingly, I would hold that Act 6687 implicitly amended the Act's language directing appeals to the V.I. District Court, and that the V.I. Supreme Court currently has the same power of review over the Commission's decisions that the Appellate Division of the V.I. District Court previously had.

As a result, I would conclude that Judge Kendall's current appeal relates to an ongoing state proceeding that is judicial in nature and, accordingly, the first *Middlesex* factor is satisfied.

### B.

Neither the District Court nor the majority disputes the satisfaction of the second factor — whether the Commission's proceedings implicate important territorial interests — and I agree. I will therefore move directly to the third factor.

### C.

Finally, *Younger* abstention requires "an adequate opportunity in the state proceedings to raise constitutional challenges." *Middlesex*, 457 U.S. at 432. Federal courts are not to suspect that a state court would preclude an aggrieved plaintiff from raising his federal constitutional claims, because such an assumption "would reflect negatively on the state's willingness to enforce federal constitutional principles. Avoiding just such an intimation . . . lies at the heart of the *Younger* doctrine." *Coruzzi*, 705 F.2d at 691. The Supreme Court has made clear that "the burden on this point rests on the federal plaintiff to show 'that state procedural law barred presentation of [its] claims.' " *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14, 107 S. Ct. 1519, 95 L. Ed. 2d 1 (1987) (alteration in original)

---

[14] Though not completely analogous for separation-of-powers concerns, the Virgin Islands has an Ethics and Grievance Committee (the "Committee") to review attorney misconduct. The Committee may not disbar an attorney without a court order following the Committee's findings and recommendations. The court's review in this scenario is "virtually *de novo*, except [it] do[es] not hear and consider anew live testimony"; it may adopt the Committee's disciplinary recommendation or impose its own. *V.I. Bar ex rel. Ethics & Grievance Comm. of the V.I. Bar v. Brusch*, 49 V.I. 409, 412 (V.I. 2008).

(quoting *Moore v. Sims*, 442 U.S. 415, 432, 99 S. Ct. 2371, 60 L. Ed. 2d 994 (1979)). The majority concludes that the lack of any judicial review results in no meaningful chance for a judge under investigation to raise federal constitutional challenges and that, even if a judge could raise those arguments before the Commission, the Commission's local administrative process does not amount to a full and fair opportunity to litigate such claims. I disagree with both conclusions.

In *Middlesex*, the Supreme Court was not persuaded by the argument that the state court judge facing disciplinary proceedings had no opportunity to raise his federal constitutional claims when he had never attempted to raise those claims in the state proceedings. 457 U.S. at 435. Likewise, Judge Kendall did not attempt to raise constitutional claims before the Commission, and argues that it is "unclear" whether the Commission would refuse to entertain such claims. Even assuming the Commission was unable to consider such arguments, this would not be fatal. We have stated that "[t]he third part of the [*Middlesex*] test 'is satisfied in the context of a state administrative proceeding when the federal claimant can assert his constitutional claims during state-court judicial review of the administrative determination.' " *Zahl*, 282 F.3d at 210 (quoting *O'Neill v. City of Phila.*, 32 F.3d 785, 792 (3d Cir. 1994)). As in *Schall*, the Legislature has not placed any limitations on issues appealable from Commission proceedings, and I do not perceive any. *See* 885 F.2d at 107. The *Pennzoil* Court further stated that:

> "Article VI of the United States Constitution declares that 'the Judges in every State shall be bound' by the Federal Constitution, laws, and treaties. We cannot assume that state judges will interpret ambiguities in state procedural law to bar presentation of federal claims. Accordingly, when a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary."

481 U.S. at 15 (citation omitted). As discussed, I would conclude that the V.I. Supreme Court has jurisdiction to review the Commission's decisions and that, upon review, it may also consider the appellant's federal constitutional claims, which it is fully equipped to consider. Therefore, the third *Middlesex* factor is satisfied, as there is an adequate opportunity to raise federal constitutional challenges.

## D.

Judge Kendall argues that even if we conclude that all three *Middlesex* factors are met, we should still refuse to abstain under *Younger* from reaching the merits because "other extraordinary circumstances exist, such as proceedings pursuant to a flagrantly unconstitutional statute, such that deference to the state proceeding will present a significant and immediate potential for irreparable harm to the federal interests asserted." *Schall*, 885 F.2d at 106. He thus contends that the Commission's proceedings are unconstitutional and threaten to cause him irreparable injury.

The Supreme Court has stated that in this context " '[t]he accused should first set up and rely upon his defense in the state courts, even though this involves a challenge of the validity of some statute, unless it plainly appears that this course would not afford adequate protection.' " *Younger*, 401 U.S. at 45 (quoting *Fenner v. Boykin*, 271 U.S. 240, 243-44, 46 S. Ct. 492, 70 L. Ed. 927 (1926)). I read this to imply that federal courts should be mindful of their role vis-á-vis state courts. Though the majority's conclusions regarding the merits of the instant appeal are not without some persuasive force, I decline to reach the merits in this dissent because I believe it is precisely this type of inquiry that the Virgin Islands judiciary should undertake itself and I cannot view the Act, on its face, as "flagrantly unconstitutional."

Moreover, irreparable injury is an "insufficient" ground for a federal court to interfere with a state proceeding "unless it is both great and immediate." *Id.* at 46 (internal quotation marks omitted). This requires a heightened showing of injury from that required for a permanent injunction or for standing purposes. It must exceed harm related simply to "cost, anxiety, and inconvenience of having to defend against a single criminal prosecution." *Id.*; *see also Stolt-Nielsen, S.A. v. United States*, 442 F.3d 177, 184 (3d Cir. 2006) ("[S]imply being indicted and forced to stand trial is not generally an injury for constitutional purposes . . . ."); *Deaver v. Seymour*, 822 F.2d 66, 69, 261 U.S. App. D.C. 334 (D.D.C. 1987) ("Although it is surely true that an innocent person may suffer great harm to his reputation and property by being erroneously accused of a crime, all citizens must submit to a criminal prosecution brought in good faith so that larger societal interests may be preserved." (as quoted in *Stolt-Nielsen*, 442 F.3d at 184)). Harm to reputation based on criminal

charges certainly outweighs the reputational harm Judge Kendall claims on the basis of the Commission's judicial review proceedings. Because Judge Kendall cannot meet the high burden of demonstrating irreparable harm with concerns merely to his reputation and social relationships, I do not believe we should refuse to abstain on irreparable injury grounds.

### III.

In conclusion, I would abstain under *Younger* from reaching the merits of Judge Kendall's case because all three factors of the *Middlesex* test are present. In my view, the Commission is not trying a case, it is simply tasked with determining whether a territorial court judge can continue to serve. There is no need for the federal courts to reach the merits of this case when the Commission may not find that Judge Kendall engaged in any misconduct. Congress gave the V.I. Legislature the power to prescribe the qualifications and duties of judges, and I would allow the Commission and the V.I. Supreme Court to determine for themselves whether the Commission violates the separation of powers doctrine of the ROA. I therefore respectfully dissent. Accordingly, I would reverse the order of the District Court.